No. 46,569

Jo Ellen Bandel, *Appellant*, v. Delmar W. Bandel, *Defendant in Trial Court*, and (Stanley Pettibone and Martha Pettibone, *Appellees*.)

(508 P. 2d 487)

Opinion filed April 7, 1973.

*Bill R. Cole*, of Weinlood, Cole, Oswalt & Shaffer, of Hutchinson, argued the cause, and was on the brief for the appellant.

*Bernard E. Whalen*, of Zuspann, Soward & Whalen, of Goodland, argued the cause, and *Jack L. Burr*, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal from an order of the trial court denying the natural mother's motion for custody of her two minor children and granting third parties consent to adopt the children.

Basically two issues are presented: (1) The construction of K. S. A. 1972 Supp. 60-1610 (*a*); and (2) the significance of a recital in the journal entry awarding *permanent* custody of the minor children to third parties shortly after the parents were divorced.

Jo Ellen Bandel and Delmar W. Bandel, husband and wife, were legally divorced on February 19, 1968. At a subsequent hearing held April 29, 1968, to determine who should have the care and

custody of their two minor children, each of the parents was found to be unfit to have the custody of their two minor children, and *permanent custody* of the children was awarded to Stanley Pettibone and Martha Pettibone, brother-in-law and sister of Delmar W. Bandel.

The minor children, Troy Wayne Bandel and Kimberly Bandel, age 4 years and 4 months, respectively on February 19, 1968, have been with the Pettibones since the court's decision in April, 1968.

On April 8, 1970, Jo Ellen Bandel, now Jo Ellen Bizzell, (appellant) filed a motion requesting the court to grant the custody and control of the two minor children to her. It should be noted this was nearly two years after the court's original order granting the Pettibones permanent custody of the two children.

Thereafter, the trial court sent a letter to counsel dated July 27, 1970, which stated in part as follows:

"I have studied the statute involved, the transcript and the journal entry. *It is my conclusion that I made an order granting permanent custody of the children to Mr. and Mrs. Stanley Pettibone.* I think this was as permanent a change of custody as it is within the power of the District Court to make. *The statute does leave jurisdiction in the Court to change this order,* but I believe that any such change would have to be made, if it can be made at all, after good cause being shown.

"Without pre-judging the matter, *the only evidence that I could conceive of under which an order could be made changing custody would be evidence showing Mr. and Mrs. Pettibone are no longer fit to have custody of these children.* From the brief conversation concerning the matter that I had with Mr. Cole I gathered that the thrust of his evidence would be towards the rehabilitation of Mrs. Bandel rather than any attempt to show unfitness on the part of the Pettibones.

"While I am not pre-judging the matter, *I do not feel that such evidence could be sufficient to cause a change in the custody order.*" (Emphasis added.)

On September 21, 1970, approximately five and one-half months after the appellant had moved the court for an order changing the custody of the children, Stanley Pettibone and Martha Pettibone (appellees) filed an application with the trial court requesting ". . . permission to consent to the adoption of Troy Wayne Bandel and Kimberly Bandel, in accordance with the provisions of K. S. A. 60-1610, as amended. . . ."

After hearing the matter on November 2, 1970, the trial court by journal entry dated November 12, 1970, *found as a matter of law:*

"1. That the parental rights of plaintiff and defendant were severed by this Court on the 29th day of April, 1968.

"2. That evidence introduced in this Court for the purpose of changing the

custody of the children should go to the fitness or unfitness of Stanley and Martha Pettibone, rather than the fitness or unfitness of Jo Ellen Bandel, plaintiff, or Delmar W. Bandel, defendant."

Upon the factual information introduced the trial court found:

"1. That the best interests and the welfare of Troy Wayne Bandel, born October 30, 1963, and Kimberly Bandel, born October 10, 1967, the children who are the subjects of this hearing, will best be served by leaving custody of them with Stanley Pettibone and Martha Pettibone."

On December 11, 1970, an order was filed wherein the trial court granted Pettibones permission to consent to the adoption of the two minor children, as follows:

"1. That the application of Stanley Pettibone and Martha Pettibone, husband and wife, for permission to consent to adopt Troy Wayne Bandel and Kimberly Bandel should be the same is hereby allowed.

"2. The court hereby grants its consent to Stanley Pettibone and Martha Pettibone to adopt as their own children, Troy Wayne Bandel and Kimberly Bandel.

"3. The court orders that the adoption proceedings be stayed until the plaintiff and the defendant in this case have an opportunity to perfect an appeal to the Supreme Court of the State of Kansas, and until the same has been determined by the Supreme Court of the State of Kansas."

It should be noted the court was giving the Pettibones permission to consent to themselves to adopt the two minor children.

K. S. A. 1972 Supp. 60-1610 (a) (last amended in 1965) provides:

"(a) *Care of minor children. The court shall make provisions for the custody, support and education of the minor children, and may modify or change any order in connection therewith at any time, and shall always have jurisdiction to make any such order to advance the welfare of a minor child if (i) the child is physically present in the county, or (ii) domicile of the child is in the state, or (iii) the court has previously exercised jurisdiction to determine the custody or care of a child who was at such time domiciled in the state.* In connection with any decree under this article, the court may set apart such portion of the property of either the husband or the wife, or both of them as may seem necessary and proper for the support of all of the minor children of the parties, or of either of them. *If the court finds that both parties are unfit to have the custody of such minor children, their parental rights may be terminated and the custody of such children placed with an appropriate person, agency, or association, in or out of the state of Kansas. If such an order remains in effect for one year or more,* the person, agency or association having such custody *may be given by the court the power to consent to the adoption of any such minor child* under the adoption laws of this state under the following conditions:

"(1) *Application.* Application shall be made to the district court in which the decree was granted for permission to consent to such adoption.

"(2) *Notice.* At least thirty (30) days *written notice* of such application

*shall be given to the parents,* if their whereabouts are known, and to their attorneys of record, if any, by restricted mail prior to the hearing of the application.

"(3) *Restoration of parental rights. If the court permits such consent to be given,* the court in which the adoption proceedings are commenced shall have exclusive jurisdiction over the custody of the minor child. If the adoption proceedings do not result in final adoption, *the jurisdiction of the district court shall be immediately restored, and parental rights which have been terminated under the provisions of this subsection may be restored* on the application of either party by order of the court in which they were terminated and on such reasonable notice to all parties affected as the court may require." (Emphasis added.)

While it may be said 60-1610 (*a*), *supra,* has been poorly drafted concerning the subject matter at hand, the legislative intent can be ascertained. If the trial court is granted power to restore parental rights, which have been terminated where adoption proceedings have been attempted, inferentially the legislature intended that the trial court should have such power where parental rights have been terminated under the statute prior to the granting of consent for the adoption of the children. This construction of the statute must be inferred from the entire section and in particular from the first sentence reading:

"The court shall make provisions for the custody, support and education of the minor children, and *may modify or change any order in connection therewith at anytime, and shall always have jurisdiction to make any such order to advance the welfare of a minor child.* . . ." (Emphasis added.)

Furthermore, 60-1610 (*a*) (2), clearly indicates, that the natural parents have *rights* concerning their children prior to the trial court's giving consent to adopt the children where parental rights have been terminated. Otherwise, there would be no point in giving them notice where application has been made to the court for consent to place the children for adoption.

The Pettibones argue the journal entry raises the meaning of the term "permanent custody." They resort to the dictionary definition of "permanent." They also seek support from language in *Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746, which states in substance that a parent who has not been found to be an unfit person to have custody in a proceeding where that question is an issue, is entitled to custody as against a third party or others who have no permanent or legal right to custody. (See, *Finney v. Finney,* 201 Kan. 263, 267, 440 P. 2d 608.)

The simple answer to the foregoing argument is that the statute

does not authorize the placing of children "permanently" as the Pettibones seek to define the term. The statute does not use the word "permanent" or "temporary" in connection with matters of child custody. Instead, the statute confers powers on the district court to make provisions for the custody of the minor children, authorizing it to modify or change *any order* in connection therewith *at any time*, and it gives the district court jurisdiction to make any such order to advance the welfare of minor children.

On the record here presented the trial court misconstrued the statute in question by refusing to consider evidence concerning the rehabilitation of the appellant to show her fitness to have custody of the children at the time her motion for change of custody was filed. Under the statute the trial court was required to hear and consider this evidence, even though it may have previously terminated parental rights. Accordingly, at the hearing the trail court erred in restricting its consideration of evidence to an issue concerning the Pettibone's fitness to have custody of the children.

On the record here presented the trial court was required to hear evidence pertaining to the mother's fitness to have custody of her two minor children when it considered her motion for change of custody, because it had jurisdiction under 60-1610 (a), *supra*, and authority to change the custody at any time should it advance the welfare of the minor children.

The appellant contends the trial court erred in holding that parental rights had been terminated on April 29, 1968. The appellant argues the journal entry fails to disclose one word or suggestion that parental rights were being severed. The point is well taken.

The journal entry of the April 29, 1968, custody hearing, after reciting a finding by the trial court that both parents were unfit to have custody of the minor children, reads:

"The Court after further consideration of the matter of the custody of the minor children of the aforesaid parties, and on hearing evidence in regard to placing the custody of said minor children in Stanley Pettibone and his wife, Martha Pettibone, finds that the *permanent custody* of Troy Wayne Bandel and Kimberly Bandel, the minor children of the aforesaid plaintiff and defendant, should be placed *permanently* in Stanley Pettibone and Martha Pettibone. It is so ordered." (Emphasis added.)

It was from the foregoing quoted paragraph in the journal entry that the trial court later *found as a matter of law* that parental rights of the appellant and her former husband were severed on the 29th day of April, 1968.

It is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, so that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. (46 Am. Jur. 2d, Judgments § 67, p. 360; and 49 C. J. S., Judgments § 72, p. 191.)

The Supreme Court of Colorado in *Golden Press v. Rylands,* 124 Colo. 122, 235 P. 2d 592, said:

". . . Moreover, a judgment must be definite and certain in itself. 'It must fix clearly the rights and liabilities of the respective parties to the cause, and be such as defendant may readily understand and be capable of performing.' 49 C. J. S. 191, § 72. 'The rights of the parties under a mandatory judgment whereby they may be subjected to punishment as contemnors for a violation of its provisions, should not rest upon implication or conjecture, but the language declaring such rights or imposing burdens should be clear, specific and unequivocal so that the parties may not be misled thereby.' *Plummer v. Superior Court,* 20 Cal. (2d) 158, 124 P. (2d) 5. Lacking in this essential requirement, the portion of the decree above referred to may not stand." (p. 125.)

The foregoing rule concerning judgments was inferentially approved and applied in *Barnes v. Duncan,* 170 Kan. 610, 613, 228 P. 2d 678.

Applying the foregoing rule to the facts in the case at bar it is apparent the journal entry of the trial court dated April 29, 1968, did not sever the parental rights of the appellant and her former husband to their two minor children, and the finding of the trial court to the contrary is erroneous.

Had the journal recited that parental rights were terminated an appeal may have been taken from the order on advice of counsel.

The consent to the adoption given by the trial court to the Pettibone's under 60-1610 (*a*), *supra,* must be founded upon a prior termination of parental rights. Absent such termination of parental rights, there can be no permission granted by the district court for the adoption of the children.

The judgment of the lower court is reversed with directions to grant the appellant a hearing on her motion for change of custody in accordance with the views heretofore expressed.

FROMME, J., dissenting.