No. 47,851

Virginia Kendall, *Appellant,* v. Marie Kendall, *Appellee,* and In the Matter of the Estate of Raymond P. Kendall, Deceased.

(545 P. 2d 346)

Opinion filed January 24, 1976.

*David H. Heilman,* of Council Grove, argued the cause and was on the brief for the appellant.

*Harold L. Haun,* of Council Grove, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by Virginia Kendall (plaintiff-appellant) from the trial court's order refusing to enforce a judgment lien for future alimony payments against the estate of her deceased ex-husband, Raymond P. Kendall.

Raymond P. Kendall and Virginia Kendall were husband and wife until November 1969. During the marriage Mr. Kendall was a funeral home director at 102 North Mission, Council Grove, Kansas, which also served as the Kendalls' residence. In August of 1969 Virginia Kendall filed a separate maintenance action. On November 24, 1969, she amended her petition seeking separate maintenance to a petition seeking divorce. On November 26, 1969, a divorce was granted.

A property settlement was mutually agreed upon between Virginia and Raymond after both had consulted with attorneys. Pursuant to this agreement Virginia received certain property owned by her prior to her marriage, her personal effects, an automobile, a cabin at the Council Grove Lake Park, and the sum of $3,000 cash. The agreement also ordered the husband to pay alimony in the sum of $350 per month for ten years, unless terminated by the death or remarriage of Virginia. The pertinent provision read:

"The husband is to pay the wife alimony in the sum of $350.00 per month, beginning December 1, 1969, and of which said monthly payments are to be for a period of ten years, or is to be terminated upon the death or remarriage of the wife, in the event of either said occurrences should occur prior to the ten year period. The payment for ten years has reference to the payment for the period of 120 months. In the event that the wife, Virginia Kendall, should die prior to the expiration of ten years from the first payment due on December 1, 1969, or should remarry then the alimony payments of $350.00 per month shall terminate, and of which the husband will be no longer liable or responsible for making of future payments. It is further understood and agreed by the parties hereto that the alimony payments in the sum of $350.00 per month are to be considered as a judgment against the party of the second part, the husband, being Raymond P. Kendall, a/k/a Jerry Kendall, and of which the same is to have the same force and effect as a judgment on the date of which said property settlement agreement is incorporated into and made a part of the decree of divorce, if the same should be approved by the court."

This provision was further supplemented by a clause which read in part as follows:

"It is further agreed by and between the parties hereto that all the property and money to be received in a lump sum payment as of that date by the wife is to be considered as a property settlement. The alimony thereon is to be in

the sum of $350.00 per month for the period of time as set forth in said agreement, subject to modification as set forth in this agreement. The wife shall have a lien on the property of the husband to secure the payments as outlined herein; and it is further understood and agreed by the parties hereto that the same cannot be modified or changed except by the terms of this agreement and according to the provisions set forth in said agreement."

Pursuant to this property settlement agreement the husband received his personal effects, all bank accounts, and all real estate, including the funeral home property at 102 North Mission, which was not otherwise given to Virginia. The property settlement agreement was duly merged in the divorce decree.

Raymond Kendall later married Marie Kendall on April 30, 1970. No children were born to this second marriage. On July 11, 1974, Raymond Kendall deeded certain property to himself and Marie as joint tenants with rights of survivorship and not as tenants in common. On August 21, 1974, Raymond Kendall died. Marie Kendall was duly appointed as executrix of his estate.

At the time of Mr. Kendall's death he had made his $350 monthly alimony payments as provided in the property settlement agreement, except he was delinquent in making three payments of $350 per month, or a total of $1,050. The appellant who has not remarried, sued in probate court to foreclose a judgment for $22,050 —the sum which would be owing on $350 per month for the balance of the ten years mentioned in the agreement. The claim was transferred to the district court for a hearing. The trial court refused to enforce the judgment lien of Virginia Kendall, beyond the $1,050 which was owing at Mr. Kendall's death. The funeral home property at 102 North Mission was further set aside as Marie's homestead.

The disposition of this appeal is controlled by *In re Estate of Sweeney*, 210 Kan. 216, 500 P. 2d 56.

In the case at bar the appellant first contends the court erred in holding the $22,050 was future alimony and not a property settlement. The appellants in the Sweeney case, as here, place primary reliance on *In re Estate of Shideler*, 172 Kan. 695, 242 P. 2d 1057. The *Shideler* case involved monthly payments made in connection with a property settlement which were not denominated as alimony. Here, and in the *Sweeney* case, the monthly payments were denominated as "alimony." A property settlement agreement involving a lump sum of $3,000 cash was made here. A similar cash property settlement was present in the *Sweeney* case. This court has often instructed:

". . . [C]are should be exercised so that any payments to equalize the division of property are not included with payments for future support denominated as alimony." (*Herzmark v. Herzmark,* 199 Kan. 48, 52, 427 P. 2d 465.)

(See also, *Beck v. Beck,* 208 Kan. 148, 490 P. 2d 628; *Drummond v. Drummond,* 209 Kan. 86, 495 P. 2d 994; and *Wallace v. Wallace,* 214 Kan. 344, 520 P. 2d 1221.) We reiterate that admonition today and hold the $22,050 alleged to be due was future alimony.

In the case at bar the appellant also contends the court erred in holding the monthly payments ceased on the date of Raymond P. Kendall's death. In the *Sweeney* case the parties' written property settlement agreement, denominated by them as a "stipulation," provided for the division of all real and personal property of the parties and provided for the future support of the wife, denominated as alimony. Under the property settlement agreement, the husband agreed to pay $650 per month "until plaintiff's remarriage or death, in either of which event said support payments shall cease and terminate." In the *Sweeney* case the husband died and his ex-wife asserted a contractual claim for future alimony for a life expectancy of 21 years at $650 per month. Following a detailed examination of the issues involved here and many of the principal authorities, we held the wife's claim was invalid. Two rules were announced which controlled the *Sweeney* decision:

"The general rule is that periodic payments of alimony to a divorced wife terminate upon the former husband's death in the absence of a provision in the settlement agreement, or in the decree, which expressly so states, or contains language which makes the intent unmistakably clear that such payments are to continue after his death.

"Parties to a divorce action have the right to contract in a separation agreement that alimony payments to the wife shall continue after the former husband's death, and where such agreement is approved by the court and incorporated in the decree, it may be enforceable against the husband's estate." (Syl. ¶¶ 1, 2.)

(See also, Comment, *Domestic Relations: Survival of Obligors' Duties Under Maintenance Decrees,* 12 Washburn L. J. 92 [1972].)

There is one distinction between the facts in the *Sweeney* case and the facts here. The Kendall agreement provides for a maximum number of alimony payments, which feature was not present in the *Sweeney* case. However, the provision calling for a maximum number of alimony payments, standing alone, cannot be construed to be clear and unmistakable language evidencing Mr. Kendall's intent that the payments were to extend beyond the date of his

death. There is simply no relationship between an intent to limit the total number of payments and any intent that the payments should continue after Mr. Kendall's death. The fact that there is a maximum number of payments does not indicate an intent to pay them all, but simply indicates an intent to limit the total payments.

In this case the separation agreement does not expressly state that the obligations for alimony were to survive the death of the husband or to bind his estate. Does the separation agreement contain language which clearly or unmistakably evidences an intent that the obligations for alimony were to survive the death of the husband or bind his estate?

Both the appellant's petition and claim seem to accelerate the payments for alimony and indicate the appellant has a "lump sum judgment." The appellant, however, does not have a lump sum judgment. The maximum sum of $42,000 is never stated in the agreement nor in the decree. The maximum amount is not susceptible to determination by mathematical computation, because of the contingencies of the death of the parties or appellant's remarriage. Generally, such contingencies do not attend a lump sum judgment. (See, *Cheek v. Kelley,* 212 Kan. 820, 512 P. 2d 355.)

Surely it was not intended that the maximum amount that could possibly come due after Mr. Kendall's death, should be accelerated to create a judgment of $22,050 upon his death. If so, the appellant could remarry on the next day and completely nullify the agreement.

It is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, in order that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. (*Bandel v. Pettibone,* 211 Kan. 672, 508 P. 2d 487.) After each payment becomes due and is unpaid, it would become determinable as to amount, and would be a final judgment. (See, *Ediger v. Ediger,* 206 Kan. 447, 479 P. 2d 823.) Here the appellee admitted $1,050 in alimony payments were due and unpaid on the date of Mr. Kendall's death, which amount was admitted to be payable by the appellee.

From the foregoing it is apparent the separation agreement does not contain language which clearly or unmistakably evidences an

intention that obligations for alimony were to survive the death of Mr. Kendall or to bind his estate.

Under K. S. A. 60-1610 (*d*) the property settlement agreement is not subject to subsequent modification. (*In re Estate of Sweeney,* supra; *Cheek v. Kelley,* supra; and *Curtis v. Curtis,* 218 Kan. 130, 542 P. 2d 330.) As such Virginia's claim for future alimony payments against the estate of her late husband is not valid and enforceable.

In light of our holding the appellant's other claims relating to homestead rights need not be discussed.

The judgment of the lower court is affirmed.

FROMME, J., dissenting. The inequity inherent in the decision of the court is apparent. At the time of the divorce in November, 1969, Raymond P. Kendall received a lion's share of the property. Virginia Kendall was assured by agreement of the parties of payment of $42,-000.00 in alimony to be paid for a fixed ten year period. These payments were made a lien on the property given to Raymond. Raymond remarried in April, 1970, and died in August, 1974. Under the court's present decision the new wife of a little over four years receives all the property of Raymond, and the former wife's right to $22,050.00, remaining due under the agreement with Raymond, is cancelled. I respectfully dissent. In my opinion neither justice nor the law requires such a result.

The Kendalls entered into a contract which was approved by the court and made a part of the divorce decree. Under this contract Raymond P. Kendall agreed to pay Virginia Kendall alimony in the sum of $350.00 per month for a period of ten years. Such payments were to be terminated only in case of the death or remarriage of Virginia. Neither of these events have occurred. There was no provision in the contract providing for an earlier termination in event of Raymond's death. The parties contracted for a definite number of payments to be made and the contract should be enforced according to its terms.

The court relies on *In re Estate of Sweeney,* 210 Kan. 216, 500 P. 2d 56. The agreement in *Sweeney* did not provide for payments to be made for a fixed period. The payments were to continue so long as the wife lived and remained single. There was no way the maximum amount of the payments could be determined until the death or remarriage of the wife. No lien against property of the husband was provided for in that contract. The rule in *Sweeney*

provides in substance that when payments of alimony under an agreement are not for a definite or fixed period the obligation terminates upon the death of the husband in the absence of a provision in the agreement which makes intent to continue the obligation to pay after the death of the husband unmistakably clear.

Two provisions in the present contract, in my opinion, make this intent unmistakably clear. First, the provision that the husband pay $350.00 per month for a fixed period of ten years. Second, the further provision in the contract which subjects the property of the husband to a lien to assure payment of the alimony, the lien to be effective *on the date the property settlement agreement is incorporated in the final divorce decree.*

This latter provision is meaningless unless the parties intended payment of the full $42,000.00 (120 payments of $350.00), subject only to the death or remarriage of the wife. The court interprets this provision to impose no lien on the date of the incorporation of the agreement in the final divorce decree. The court indicates no lien would arise until a payment was missed. This overlooks the plain wording of the provision and the reason for inserting such provision in the agreement in the first place.

It is obvious to me that this provision in the agreement was to protect the wife and assure payments for her support for a fixed period.

A further provision in the agreement provided: ". . . The wife shall have a lien on the property of the husband to secure the payments as outlined herein; and it is further understood and agreed by the parties hereto that the same cannot be modified or changed except by the terms of this agreement and according to the provisions set forth in said agreement."

The parties to a divorce action have the right to contract in a separation agreement that alimony payments to the wife shall continue after the former husband's death, and where such agreement is approved by the court and incorporated in the decree, it may be enforceable against the husband's estate. (*In re Estate of Sweeney,* supra, Syl. ¶ 2.)

I would enforce the lien under the contract of the parties and require continued monthly payments of $350.00 for the remainder of the ten year period, subject to termination of the payments on death or remarriage of Virginia Kendall.

PRAGER, J., joins in the foregoing dissenting opinion.