(596 P.2d 827)

No. 49,971

BROCKMAN EQUIPMENT LEASING, INC., *Appellant,* v. JOHN ZOLLAR, *Appellee.*

Opinion filed June 22, 1979.

*Mark W. Slatkin,* of Kansas City, Missouri, and *Mark R. Singer,* of Overland Park, for the appellant.

*Robert A. Andrews,* of Mission, for the appellee.

Before Foth, C.J., Parks and Swinehart, JJ.

Foth, C.J.: This case involves the enforceability of a foreign judgment in this state under the uniform enforcement of foreign judgments act, K.S.A. 60-3001 *et seq.* The plaintiff, Brockman Equipment Leasing, Inc., is the holder of a Missouri judgment in the amount of $14,923.04 and costs against the defendant John Zollar. Brockman appeals from an order of the district court "dismissing" the present proceeding to enforce the judgment in this state and "rejecting" the filed transcript of the judgment.

The judgment arose out of a guaranty of a lease agreement between Brockman as lessor and a Missouri bar and grill as lessee. The guarantor of the lessee's obligations was B & Z Texaco, d/b/a Roeland Park Texaco, a partnership consisting of defendant Zollar and one Richard H. Burke. The guaranty was signed by Burke on behalf of the partnership and was secured by a security agreement covering described personal property of the partnership located in Kansas. Brockman brought suit on the guaranty against Zollar and Burke in the circuit court of Jackson County, Missouri, in June, 1976. Service on Zollar, a resident of Johnson County, Kansas, was had under the Missouri long arm statute. The record shows personal service of the summons and petition by a deputy sheriff of Johnson County. Zollar, although not formally conceding it, has never denied being so served.

Burke contested the Missouri action. Judgment was entered against him on July 12, 1977, on a jury verdict for $5,000 and costs. Zollar defaulted, and the Missouri court on the same day entered default judgment against him for $14,923.04 in accordance with the plaintiff's prayer. The troubles in this case stem largely from the first paragraph of the journal entry of the default judgment:

"Now on the 12th day of July, 1977, *this cause comes on for trial, pursuant to published notice.* Plaintiff appears in person and by its attorney, Defendant John Zollar appears not, although *notified by publication.*

"The Court having examined the pleadings filed herein, having heard the evidence, and being duly advised in the premises, finds Defendant Zollar in default and the issues in favor of Plaintiff and against Defendant Zollar. The Court further finds that Brockman Equipment Leasing, Inc. shall have judgment in the amount of Thirteen Thousand Nine Hundred Seventy Dollars ($13,970.00) plus interest and attorney's fees in the amount of Nine Hundred Fifty-Three and 04/100 Dollars ($953.04) or for a total of Fourteen Thousand Nine Hundred Twenty-Three and 04/100 Dollars ($14,923.04).

"It is therefore CONSIDERED, DECREED AND ADJUDGED that Plaintiff Brockman Equipment Leasing, Inc. have and recover as to Plaintiff's Petition the amount of Fourteen Thousand Nine Hundred Twenty-Three and 04/100 Dollars ($14,923.04) of and from Defendant John Zollar.

"The Court assesses costs against Defendant Zollar for which amounts let execution issue." Emphasis added.

The Missouri judgments against Burke and Zollar were separately filed with and separately docketed by the clerk of the district court of Johnson County in August, 1977. Notice of filing was sent pursuant to K.S.A. 60-3003. Subsequent negotiations resulted in an agreement in December, 1977, for Burke to pay his judgment in installments. Payments were completed and the Burke judgment was formally satisfied in July, 1978.

In the meantime in January, 1978, Brockman instituted the present collection proceeding on the Zollar judgment by filing a motion to charge Zollar's interest in Roeland Park Texaco, and particularly the property listed in the security agreement, with the unpaid judgment. In the motion it was alleged that $9,923.04 remained unpaid, thus crediting Zollar with Burke's $5,000.00 paid or agreed to be paid. Zollar responded with a motion to dismiss, alleging in essence that the guaranty obligation was a joint obligation and that it was improper for the Missouri court to have rendered separate judgments against Burke and Zollar.

In a letter decision dated February 24, 1978, the trial court rejected Zollar's argument as an improper collateral attack on the foreign judgment. However, the trial court on its own motion raised the jurisdiction of the Missouri court, based on the first paragraph of the journal entry quoted above. The court below interpreted the recitation in the journal entry that Zollar had been "notified by publication" as meaning Zollar had been *served with summons* by publication. Such service, it concluded, did not comport with Mo. Rev. Stat. § 506.160 and did not confer personal jurisdiction on the Missouri court. The court therefore "dismissed" the current action.

Brockman promptly filed a motion for reconsideration, attaching an authenticated copy of the summons and the sworn return by a deputy sheriff of Johnson County, Kansas, showing personal service. The reference to "published notice" and "notified by publication" in the journal entry, it was explained, had to do with notice of the trial setting at which the default judgment was

taken, and not to the service of summons which had taken place over a year earlier.

Zollar's response to this motion was a written challenge to the Missouri court's jurisdiction. His argument was that his only contact with Missouri was the contract of guaranty, which was signed only by Burke, and that under the Uniform Partnership Act he could be bound only if he had expressly authorized Burke to bind the partnership.

At the hearing on the motion to reconsider Brockman offered the authenticated summons and return, but no testimony was offered by either party. The court then entered the order appealed from, the two significant paragraphs being:

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Court uphold and renew its dismissal of this action, pursuant to the Court's original decision contained within the Court's letter of February 24, 1978.

"IT IS FURTHER ORDERED BY THE COURT that the transcript of foreign judgment, authenticated according to the Act of Congress, said judgment having been entered in the Circuit Court of Jackson County, Missouri on July 12, 1977, in Case No. CV 76-2682, is hereby rejected by the Court for the reason that the transcript is ambiguous, vague, and incomplete so as to render it unenforceable in the State of Kansas."

As to the second paragraph, dealing with ambiguity, we are hard pressed to follow the trial court's reasoning. The standard for enforceability of a judgment has been enunciated by our Supreme Court in the following language:

"It is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, in order that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law." *Bandel v. Pettibone,* 211 Kan. 672, Syl. ¶ 3, 508 P.2d 487 (1973).

See also *Barnes v. Duncan,* 170 Kan. 610, 613, 228 P.2d 678 (1951), relied on in *Bandel,* and *Kendall v. Kendall,* 218 Kan. 713, 717, 545 P.2d 346 (1976), applying the *Bandel* formulation.

The essence of the specificity requirement is that the parties—or another court—should be able to tell what obligations the judgment imposes. In this case the obligation is clear: it is a simple money judgment in a fixed sum, and the defendant's obligation is to pay that sum forthwith. Tested by the *Bandel* rule there is no ambiguity.

Zollar contends, however, that ambiguity arises from the references to publication notice in the journal entry. But whatever questions might arise from that language as to the mode of service are put to rest by the sheriff's return. Other questions suggested by Zollar, such as why notice of the trial setting was published instead of mailed, do not affect the specificity of his obligation and therefore do not create the kind of ambiguity which would render the judgment unenforceable.

We conclude that the claimed ambiguity is not a sufficient reason to refuse to enforce the judgment.

The jurisdictional question is somewhat more troublesome, although not for the apparent reason relied on by the trial court. The first decision to dismiss was clearly based on the false assumption that service was had by publication only. The final order merely reaffirmed the earlier letter decision, presumably on the same theory. In the face of the unchallenged sheriff's return that reason is not good.

In this court Zollar reasserts the argument made in response to the motion for reconsideration which, if relied on by the trial court, was not mentioned in the final order. The argument, which concedes personal service in Kansas, goes like this:

1. Under the Missouri long arm statute, Mo. Rev. Stat. § 506.500(2), Zollar would be subject to in personam jurisdiction in Missouri only if he entered into a contract in that state.

2. The contract in question was signed only by Burke, purportedly on behalf of the partnership.

3. Under the uniform partnership act, Mo. Rev. Stat. § 358.090(1), (2), K.S.A. 56-309 (a), (b), Burke's act would bind Zollar as a nonsigning partner only if the contract was in the usual course of the partnership business or if Zollar expressly authorized it.

4. Guaranteeing the obligations of a Missouri bar and grill is clearly not in the usual course of a Kansas filling station business.

5. Therefore Zollar was not a party to the contract—and hence did nothing to subject himself to the jurisdiction of the courts of Missouri—unless he expressly authorized the contract.

6. Brockman's petition in the Missouri action did not plead express authorization. It thus shows on its face that Zollar was not a party to the contract and that Missouri therefore had no jurisdiction over him.

Zollar was, of course, entitled to make a jurisdictional attack on the Missouri judgment. If the Missouri court in fact had no jurisdiction its judgment is not entitled to full faith and credit. *State v. Duke,* 205 Kan. 37, 40, 468 P.2d 132 (1970), and *cases cited.* Further, since he did not appear in the Missouri suit and litigate the jurisdictional question he is not bound on that issue by the doctrine of res judicata. Compare, *e.g., Williams v. North Carolina,* 325 U.S. 226, 89 L.Ed. 1577, 65 S.Ct. 1092 (1945), with *Sherrer v. Sherrer,* 334 U.S. 343, 92 L.Ed. 1429, 68 S.Ct. 1087 (1948) and *Coe v. Coe,* 334 U.S. 378, 92 L.Ed. 1451, 68 S.Ct. 1094 (1948). And *cf. Baldwin v. Traveling Men's Assn.,* 283 U.S. 522, 75 L.Ed. 1244, 51 S.Ct. 517 (1931).

It was incumbent on Zollar, however, to demonstrate Missouri's lack of jurisdiction, and to do so convincingly. "The burden of undermining the verity which [foreign] decrees import rests heavily upon the assailant." *Williams,* 325 U.S. at 233-4. Or, as our own Supreme Court has put it, "Collateral attacks upon judicial proceedings are never favored, and where such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void but will be held to be valid." *Jones v. Jones,* 215 Kan. 102, Syl. ¶ 4, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974).

Granting without deciding the correctness of Zollar's first five propositions enumerated above, he has failed to sustain the burden which "rests heavily" upon him to show a lack of jurisdiction. The petition filed in the Missouri case alleged:

"3. Defendant Burke is a resident of the State of Kansas, a partner in the above referenced partnership and at all salient points of time herein, an officer of Harlow's Inc. (corporation), *with actual authority to enter into contractual relationships by and for* said corporation *and said partnership* and may be served pursuant to R. S. Mo. § 506.500 (2)."

"7. On or about August 6, 1975 in Kansas City, Jackson County, Missouri, Defendant Burke, *under his authority as partner* executed a security agreement and financing statement and agreement of guaranty, copies of which are attached hereto, denoted as Exhibit C and made a part hereof, guaranteeing the above referenced lease." Emphasis added.

It was thus twice alleged that Burke had authority to bind the partnership to the guaranty agreement. Even under our old code of civil procedure requiring fact pleading those allegations of authority would have been sufficient to withstand a demurrer,

even though they are general allegations where arguably special authority was required. See *Belin v. Hoover,* 193 Kan. 29, 391 P.2d 1021 (1964) and cases cited. Certainly the petition does not show on its face that Burke *lacked* authority to bind the partnership. Hence the Missouri judgment, even when examined in the light of the pleadings, shows prima facie that the Missouri court had jurisdiction over Zollar because of his contract in that state.

As noted above, Zollar could have contested the factual basis of Missouri's jurisdiction; such a contest, however, would have required at least factual allegations and evidence to rebut the "verity" imported by the judgment. Zollar offered neither, *i.e.,* he neither pleaded that Burke acted without authority nor did he so testify. Instead, when the jurisdictional issue was raised by the trial court he relied on what he perceived as a defect in Brockman's pleading. As has been demonstrated, that perception was erroneous.

We conclude that Zollar has not "clearly and conclusively" made it to appear that the Missouri court had no jurisdiction. If the trial court relied on this argument of Zollar's for its finding of no jurisdiction this ground must also fail.

Zollar also argues that we should dismiss this appeal, claiming it is moot. The claim is based on Burke's agreement with Brockman in December, 1979, as to the payment of the Burke judgment, and the subsequent release of that judgment in July, 1978. The argument is without merit. The agreement was between Brockman's counsel and Burke's counsel, who only later undertook to represent Zollar. The correspondence and the satisfaction of judgment referred only to Burke and to the docket number of the Burke judgment. If Zollar's obligation was to be released, at least the satisfaction should have referred to Zollar and the separate docket number of the Zollar judgment—by that time Zollar's present counsel represented both him and Burke. In the December correspondence there was reference to a release of the "judgments," but since only Burke was involved in the negotiations the reference was presumably to the Missouri and the Kansas judgments against Burke. We find nothing to suggest that Brockman ever agreed to release Zollar in return for satisfaction of the Burke judgment.

Finally, Zollar says Brockman can have but one satisfaction of

one injury. He suggests that he and Burke are joint tortfeasors, so that the release of one releases the other. Here, the obligation is in contract, not tort. It being joint and several, credit for payments made by Burke is all Zollar is entitled to, and what he is afforded by Brockman's pleading.

Since the Missouri judgment was not ambiguous and was rendered by a court having jurisdiction the trial court erred in refusing to give it the same effect as a judgment of a district court of this state, as required by K.S.A. 60-3002. The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.