NOT DESIGNATED FOR PUBLICATION

No. 126,234

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
S.W.,
*Appellee*,

and

M.W.,
*Appellant*.


MEMORANDUM OPINION


Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Oral argument held July 9, 2024. Opinion filed August 16, 2024. Appeal dismissed.


*Christopher T. Wilson*, of Beam-Ward, Kruse, Wilson & Fletes, LLC, of Overland Park, for appellant.


*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellee.


Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.


PER CURIAM: M.W. (Husband) appeals from the district court's post-divorce order requiring him to reimburse S.W. (Wife) for his proportionate share of daycare costs unexpectedly incurred when a no-contact order prevented Husband from exercising his parenting time during a protection from abuse (PFA) case. The same district court judge handled both the parties' divorce and the PFA case. Husband now appeals, challenging the district court's authority to enter an order modifying child support in the divorce case when only the PFA case was before him. After reviewing the issues presented, we find

1

that the order appealed from is not a final order, so we lack jurisdiction to consider this appeal. The appeal is dismissed.

FACTUAL AND PROCEDURAL HISTORY

Following a contested trial in a divorce action, the district court entered a final journal entry and decree of divorce in November 2021. Relevant to this appeal, the court ordered the parties to share joint legal custody of their four minor children with Wife having primary residential custody. A parenting plan was established. The district court also ordered Husband to pay child support of around $1,600 per month, which incorporated the fact that Wife paid "$485 per month for preschool/work-related childcare expenses." Unfortunately, neither the parenting plan nor the child support worksheet appear in the record on appeal.

*Wife petitions for a protection from abuse order against Husband.*

Six months after the divorce decree was filed, Wife filed a PFA petition against Husband on behalf of the parties' minor children. Wife had received a call from someone at the Kansas Department for Children and Families (DCF) describing a report from a neutral witness who was driving by Husband's house and saw Husband "holding our son . . . by his throat up against the outside of his house, yelling at him." In the section for additional relief requested, Wife checked the boxes for "child support," "attorney's fees . . . and costs," and "counseling for Defendant." Although the PFA case was a separate case filing from the divorce case, the petition referenced the parties' divorce case.

That same day, the district court entered a temporary ex parte order in the PFA case granting Wife sole legal custody of the minor children and prohibiting Husband from having parenting time or contacting the minor children. The court also set the matter

2

for a hearing a week later. Both parties appeared at the hearing. The court found good cause to continue the temporary order and set a trial date for August 2022.

The trial on Wife's PFA petition occurred as scheduled in August. Wife testified she was seeking reimbursement for childcare expenses, which were roughly $900 per week for all four children. She argued that these costs were incurred solely as a result of her husband having limited supervised visitation while the temporary PFA orders were in place. Mother asserted that she had to arrange summer childcare that otherwise would not have been necessary. During closing arguments, Wife's attorney stated: "My client's spent $10,000 on daycare this summer that she would not have had to have incurred— incur. And that's not contemplated in the child support worksheet in the divorce case."

The district court ultimately denied Wife's PFA petition after finding a lack of a preponderance of the evidence to support the allegations of abuse in the petition. The court did make note that Wife's filing of the petition was reasonable based on what she had been told by DCF personnel, although at trial it was discovered that the abuse alleged by DCF—not Mother—had been exaggerated.

*The district court orders Husband to reimburse Wife in the divorce case.*

Right after the PFA case was dismissed, the district court judge stated that he planned to enter orders regarding the "underlying divorce case." First, as to childcare expenses requested in the PFA case, the district court did not place fault with either parent on why the summer childcare expenses were necessary. Instead, the district court simply found that they had been incurred and must be shared proportionally based on income levels reported on their last child support worksheet.

The district court added that "[s]upervised parenting time fees . . . will also be reapportioned in proportion to incomes." Next, the court reinstated Husband's parenting

3

time from the divorce case. And finally, the district court ordered a mental health assessment and possible therapy based on the assessments for all of them, "kids and parents" "in the underlying divorce case." Other than the summer childcare expenses, none of the other orders are challenged here.

The same day, the court filed written findings in the divorce case reflecting its oral rulings from the bench. The district court entered a "Temporary Order" in the divorce case "to transition the children back to the original parenting plan in a reasonable manner." Most relevant to this appeal, the court stated: "The summer daycare costs were unavoidable. [Husband] will reimburse [Wife] for his proportionate share of the daycare incurred (in accordance with the last child support worksheet on file) from May 14, 2022, through September 7, 2022." The order also incorporated the therapy order and the changes to the parenting plan, as well as required Husband to reimburse Wife "an amount necessary to cause the final sharing of [supervised parenting time] costs to be in proportion to incomes in accordance with the last child support worksheet on file."

This raised a concern, at least for Husband, that the district court had in fact amended the custody agreement in the divorce case without an explicit finding that modification was necessary and without updated income information. Although also not in the record on appeal, the parties revealed during oral argument that Husband actually had a motion to modify child support on file, which he withdrew at some point while this case was pending. Despite this, he argues that the court should have required new income worksheets be filed to determine whether the roughly 53/47 split established was still appropriate.

So the next month, Husband raised the issue with the district court and moved to amend the temporary order "pursuant to K.S.A. [2023 Supp.] 60-259," asking the court to:

4

"a.      Set-aside the determination that a reintegration period was deemed necessary and enter an order for substantial make-up time for the [Husband].

"b.      Set-aside its order related to payment of daycare costs.

"c.      Amend its order to provide for make-up time for the children and [Husband] related to parenting time with the [Husband]."

Husband specifically argued that the order requiring him to pay daycare costs should be set aside because the current child support worksheet required Wife to pay daycare expenses and Wife had not filed any requests to modify child support.

The district court held a hearing on Husband's motion on January 9, 2023. Husband's attorney argued the district court lacked authority to sua sponte order a change in child support in the divorce case following the PFA hearing, also asserting there was insufficient evidence presented to establish the amount of daycare costs. Wife disagreed, explaining that she sent Husband's attorney a copy of the current child support worksheet and a complete breakdown of the daycare costs, which amounted to "$11,444.60 for the four children to be in daycare. 53.5 percent of that cost which was what was attributed to [Husband], would be $6,122.86." Again, these documents do not appear in the record on appeal.

The district judge denied Husband's request to set aside the daycare costs order, explaining that he was simply assessing costs as requested in the PFA petition. He also stated that he was entering orders that he found to be in the best interests of the children and nothing prevented him from doing so sua sponte. That said, key here is that the district judge questioned the amount of daycare expenses claimed for the summer and suggested that the amount claimed may not be reasonable. He gave the parties a week to submit something challenging the reasonableness of the daycare costs claimed.

At Husband's request, and despite his order specifying that reasonableness still needed to be determined, the district court also explained "to the extent that the

5

temporary order could be construed not to be a final order, it is intended to be a final order as adjusted here today." Before the court concluded the hearing, Husband's attorney offered to prepare the journal entry, to which the court agreed.

On January 17, 2023, the district court entered its journal entry denying Husband's requested relief, which stated that "[t]he Court notes that [Husband] may be heard on the reasonableness of the daycare costs, with any motion related to the reasonableness of the daycare costs being submitted by Monday, January 16, 2023." The order also stated that "[t]his ruling is a final order."

Husband appealed the court's order on February 10, 2023. Other than statements of parties and the absence of a transcript of such a hearing, nothing in the record reveals whether Husband ever seized on the district court's offer to have a hearing on reasonableness of the daycare costs or explicitly abandoned the issue—although that is central to his argument on appeal and to this court's ultimate ruling.

ANALYSIS

Husband argues that the district court impermissibly entered a sua sponte order modifying child support, failing to comply with the applicable statutes, rules, and the Kansas Child Support Guidelines for establishing or modifying a child support order.

First, we note that Husband inaccurately characterizes the district court's ruling as sua sponte because he fails to consider the sequence of events that led to the ruling. See Black's Law Dictionary 1722 (11th ed. 2019) (defining "sua sponte" as "[w]ithout prompting or suggestion"). When Wife filed her PFA petition, she also checked the box to request an order for "child support." The PFA statute expressly authorizes a court to issue an order for "support payments by a party for the support of a party's minor child"

6

in a PFA case. K.S.A. 2023 Supp. 60-3107(a)(6). So there was nothing sua sponte about this order.

Second, before proceeding to the merits of this issue, we must first address whether we have jurisdiction to consider the appeal. Wife contends this court lacks jurisdiction because the order Husband is appealing from is not a final decision.

Even if Wife had not raised this issue, we have a duty to question jurisdiction on our own initiative. The right to appeal is statutory and is not contained in the United States or Kansas Constitutions. *Wiechman v. Huddleston*, 304 Kan. 80, 86, 370 P.3d 1194 (2016). This means Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018). Whether jurisdiction exists is a question of law, subject to unlimited review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022). Likewise, this court exercises unlimited review over questions of statutory interpretation. *In re A.D.T.*, 306 Kan. 545, 551, 394 P.3d 1170 (2017).

When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013).

The relevant statute here is K.S.A. 2023 Supp. 60-2102(a)(4), which allows a party to appeal "as a matter of right from . . . [a] final decision in any action." A final decision generally disposes of the entire merits of a case and leaves no further questions *or the possibility* of future directions or actions by the district court. (Emphasis added.) *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015); see also *Bandel v. Bandel*, 211 Kan. 672, 677, 508 P.2d 487 (1973) ("It is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, so that the

7

parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law."). The term "final decision' is self-defining and refers to an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case." *In re T.S.W.*, 294 Kan. 423, 433, 276 P.3d 133 (2012).

Even if a decision is not final, it can still be challenged if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." K.S.A. 2023 Supp. 60-2102(c). But at that point it is classified as an interlocutory order which requires the court to certify the issue as appropriate for interlocutory decision and sets a shorter time to raise the issue with the appellate court— 14 instead of 30 days. See K.S.A. 2023 Supp. 60-2102(c); K.S.A. 2023 Supp. 60-2103(a).

There was no certification of a final judgment here. Instead, Husband simply asked the court to find that its decision was final, even though there were still unresolved issues. The trial court cannot make an order final and therefore appealable if it is not in fact final. *Gillespie v. Seymour*, 263 Kan. 650, 655, 952 P.2d 1313 (1998) (holding that leaving open the reasonableness of the fees and expenses or the party's share of those prevents the decision from being declared final).

Regardless of the judge's statement that the order was final, it was not.

First, none of the district court's rulings included a specific amount for the daycare costs Husband was being ordered to reimburse. In the August 2022 temporary order, the district court ordered Husband to "reimburse [Wife] for his proportionate share of the daycare incurred (in accordance with the last child support worksheet on file) from May 14, 2022, through September 7, 2022." This order was filed about a month before the

8

relevant time frame ended, revealing the district court could not feasibly determine the total amount of daycare costs at that time.

Even by the January 2023 hearing, the only relevant evidence available in the record on appeal related to the daycare costs was Wife's testimony at the PFA hearing that she was spending about $900 per week on extra daycare costs due to Husband being unable to exercise his parenting time. This amount significantly exceeded the $485 per month attributed to Wife for work-related childcare expenses in the current child support worksheet. The district court mentioned yet another amount for daycare costs at the January 2023 hearing, stating it had not "expected three months of daycare to be $11,000," referring to statements made by Wife's attorney explaining she had provided Husband's attorney with supporting documentation showing Wife incurred a total of $11,444.60 in daycare costs during the relevant time frame. But those documents were not admitted into evidence and do not appear in our record. More importantly, the journal entry does not include any amount for the daycare costs incurred by Wife, let alone the ones referenced at the hearing. See *Valadez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010) ("A journal entry containing findings of fact and conclusions of law takes precedence over and may differ from the trial court's oral pronouncement from the bench."). But in the context of a child support order, the only thing clear about this ruling is that the district court decided Husband would need to reimburse Wife for an unspecified amount of daycare costs. Leaving open the reasonableness of the childcare costs requested prevents this judgment from being final, regardless of the district court judge's statements to the contrary.

Second, even the journal entry prepared by Husband's counsel states: "The Court notes that [Husband] may be heard on the reasonableness of the day care cost." At the hearing, the court itself questioned the reasonableness of the daycare fees. The order merely states that the Husband may be heard on the issue, it does not state that if he fails

to file anything the court will declare the fees to be reasonable. There was no subsequent order finding the daycare costs to be reasonable.

Husband tries to avoid this result by stating that he concedes the issue of "reasonableness of the daycare costs" because he did not file a motion as anticipated in the court's journal entry. He asserts the specific amount is unnecessary for finality because he "understood" that the court was ordering him to pay "his line D.2 percentage from the Child Support Worksheet."

But he clearly still disputes the amount of daycare costs because he repeatedly mentions the lack of supporting evidence in his brief. Husband correctly points out that the child support guidelines also require daycare costs be "necessary and work-related" to be included in a child support obligation. See Kansas Child Support Guidelines § IV.D.5 (2023 Kan. S. Ct. R. at 121) (defining "Work-Related Childcare Costs" as "[a]ctual, reasonable, and necessary child care costs paid to permit employment or job search of a parent"). And during oral argument he stressed that there was no finding that these costs were work related. That this component of reasonableness was not addressed makes it an unresolved issue adverse to a finding of finality—not a reason for this court to reverse the trial court's order and find Husband does not owe any summer childcare costs.

For these reasons, we find that the support order Husband is seeking to appeal is not a final decision. Thus, the appeal must be dismissed for lack of appellate jurisdiction. We need not address the other issues raised by the parties.

Appeal dismissed.