(213 P.3d 1091)
No. 101,181

STATE OF KANSAS, *ex rel.* SRS AND MICHELLE THORNE,
*Appellee*, v. CHARLES CLELAND, *Appellant.*

Opinion filed August 21, 2009.

*Paul D. Post*, of Topeka, for appellant.

*Brian Frost*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, for appellee.

Before MALONE, P.J., GREEN and STANDRIDGE, JJ.

GREEN, J.: Charles Cleland appeals from the trial court's judgment ordering him to pay child support arrearages of $9,952.89 to Michele Thorne and Thorne's attorney fees of $1,000. First, Cleland argues that the child support arrearages were dormant judg-

ments under K.S.A. 2008 Supp. 60-2403. The trial court found that the child support arrearages were not dormant judgments under K.S.A. 2008 Supp. 60-2403 because less than 5 years had elapsed between collection proceedings. Thorne contends, however, that because the judgments for child support arrearages had not become void as of July 1, 2007, they will not become dormant under K.S.A. 2008 Supp. 60-2403(b). We agree. Moreover, we agree with the trial court that less than 5 years had elapsed between collection proceedings and, therefore, the child support arrearages were not dormant under K.S.A. 2008 Supp. 60-2403(a).

Second, Cleland maintains that Thorne's claim was barred by the doctrine of laches. We determine that under the facts present in this case, the trial court did not abuse its discretion in refusing to apply the doctrine of laches. Finally, Cleland argues that the trial court abused its discretion in awarding attorney fees to Thorne. After reviewing the record in this case, we determine that the trial court was within its discretion to award attorney fees as "justice and equity require" under K.S.A. 2008 Supp. 60-1610(b)(4), and we find no abuse of discretion in the trial court's award. Accordingly, we affirm.

This case began in 1987 as a child support enforcement case filed in Shawnee County by the Kansas Secretary of Social and Rehabilitation Services as to Jeremy Carson (date of birth 01/03/87), the child of Cleland and Thorne. Cleland was initially ordered to pay $80 a month in child support.

In a December 1997 written order, Cleland's support amount was modified to $228.22 per month. Moreover, Cleland and Thorne agreed that Thorne would pay 59% of Jeremy's medical bills and Cleland would pay the remaining 41%. Cleland and Thorne further agreed that Thorne would claim Jeremy as a dependent on her tax return in the odd years and Cleland would claim him in the even years. When this support order was entered, Jeremy was living with Thorne but had visitation with Cleland.

Beginning in 1989 and continuing through August 2002, numerous garnishment and income withholding orders were issued to Cleland's different employers for payment of Cleland's child support obligation. Additionally, notices of delinquency and orders

to appear and show cause as to why he had not paid his child support obligation were served on Cleland during this time period. Although some payments were made towards Cleland's child support obligation, Cleland accumulated significant arrearages while Jeremy lived with Thorne. The last income withholding order requesting that money be withheld from Cleland's income was filed on August 28, 2002, and delivered to Cleland's employer on September 3, 2002.

On November 1, 2002, Jeremy went to live with Cleland. That same month, an agreed order was entered changing venue from Shawnee County to Nemaha County because Cleland, Thorne, and Jeremy all lived in Nemaha County. On February 12, 2003, an agreed journal entry was filed in Nemaha County concerning the change in Jeremy's residential custody and modifications to the previous support orders. Cleland and Thorne agreed that Jeremy's residential custody had changed from Thorne to Cleland on November 1, 2002. As a result, Cleland and Thorne agreed that Cleland's child support obligation had ended on November 1, 2002. Cleland and Thorne also agreed that neither party would pay child support to the other "based on the parties' agreement to each provide in-kind support to the minor child." They further agreed that Cleland was in arrearage in child support for which he would receive a credit of $100 a month against his arrearage for taking residential custody starting November 1, 2002. In addition, Cleland would provide health, dental, and optical insurance for Jeremy, and the parties would each pay one-half of any expense not covered by insurance. On July 30, 2003, an "Income Withholding Order/Modification Order," which provided that no money was to be withheld from Cleland's income, was apparently filed in Shawnee County District Court.

Jeremy turned 18 in January 2005 and graduated from high school in May 2005. In an affidavit filed by Cleland in this case, Cleland stated that the child support obligation in the form of a $100 credit against any arrearage ended on June 30, 2005.

On December 31, 2007, Thorne moved for an order requiring Cleland to appear before the trial court to be examined and answer concerning his property, assets, and income. Thorne asserted that

the judgments for Cleland's child support obligations were still owing and that she did not have sufficient knowledge of Cleland's assets, income, and employment to cause a levy of execution or garnishment. In January 2008, the trial court ordered Cleland to appear for a hearing in aid of execution. Apparently, Cleland failed to appear for the hearing in aid of execution.

In May 2008, Thorne moved to reduce to judgment the child support arrearages and the postjudgment interest owed by Cleland. In responding to Thorne's motion, Cleland admitted that a child support arrearage accrued while Jeremy was a minor and was still owing when Jeremy turned 18. Nevertheless, Cleland argued that the child support arrearage judgment was dormant under K.S.A. 60-2403 because more than 5 years had elapsed between the last income withholding order filed before venue was changed to Nemaha County and the next attempted enforcement action in Nemaha County. In addition, Cleland contended that Thorne had not correctly calculated the arrearage that he owed.

Cleland also brought a counterclaim against Thorne for payment of her share of Jeremy's medical and dental bills and reimbursement of income taxes that he had paid because Thorne had claimed Jeremy as a dependent in 1998. Cleland asked that those amounts be deducted from any child support arrearage that he owed Thorne.

Thorne responded to Cleland's answer and counterclaim by arguing that Cleland's child support arrearages were not dormant under K.S.A. 60-2403 because not more than 5 years had elapsed between enforcement proceedings. Moreover, Thorne contended that the judgments for Cleland's child support obligation could not be offset by the medical bills and income tax payments, as Cleland had requested. Thorne further contended that Cleland had never submitted those expenses to her and that Cleland's claim for those expenses was stale and subject to the doctrine of laches. In addition, Thorne requested that if the trial court found Cleland's demand for expenses to be timely and valid, she be allowed to submit for reimbursement Jeremy's noncovered medical expenses that she had paid. Finally, in the event that the trial court determined that

the child support judgments against Cleland had become dormant, Thorne moved for revivor.

On June 24, 2008, Thorne moved for her attorney fees in attempting to collect past-due child support and postjudgment interest. Attached to Thorne's motion for attorney fees was a brief itemization of $1,806 in attorney fees.

The trial court held a hearing on Thorne's motion to reduce to judgment child support arrearages and postjudgment interest, her motion for revivor, and her motion for attorney fees on June 25, 2008. At the hearing, the parties were unable to agree as to the amount of the child support arrearages owed by Cleland. Although Thorne's attorney had worked up a detailed spreadsheet as to the arrearages and interest owed by Cleland, Cleland's attorney did not provide a spreadsheet as to his estimated amount of the arrearages but stated that he had some calculations provided by Cleland's former attorney. Thorne's attorney agreed to provide the trial court and Cleland's attorney with the records he had obtained from the Shawnee County clerk's office. Concerning the issue of dormancy, Cleland's attorney was to provide the trial court and Thorne's attorney with the docket sheet from the Shawnee County court, reflecting the enforcement history of this case. The trial court gave the parties 10 days to advise the court as to whether the records and the arrearage calculations were inaccurate. Apparently, Thorne's attorney provided the trial court and Cleland's attorney with the docket sheet and the child support records, and Cleland's attorney never objected to the accuracy of the records or calculations.

In July 2008, Cleland moved for summary judgment against Thorne as to her motion to reduce to judgment his child support arrearages and postjudgment interest. Cleland argued that the child support judgments were dormant under K.S.A. 60-2403(a)(1), that Thorne was not the real party in interest to bring the revivor action under K.S.A. 60-2404, that Thorne's claim was barred by the doctrine of laches, and that Thorne was not entitled to attorney fees.

In August 2008, the trial court issued a memorandum decision. The trial court found that the child support judgments were not

dormant under K.S.A. 60-2403 because less than 5 years had elapsed between collection proceedings. Concerning Cleland's counterclaim for unpaid medical bills and income tax payments, the trial court found that Cleland's claims were "plainly stale and out of date" and that the child support judgments were not subject to an offset by law. The trial court determined that Cleland was not entitled to equitable relief that would allow him to avoid paying his child support obligation. As a result, the trial court entered judgment against Cleland in the amount of $9,952.89, which included the unpaid child support and interest. In addition, the trial court awarded Thorne $1,000 in attorney fees.

## A. *Abandoned Argument*

Importantly, in his appellate brief, Cleland does not raise any issue as to the trial court's decision denying payment for Jeremy's medical bills and Cleland's income tax payments. As a result, any argument as to the trial court's decision on this issue is deemed waived or abandoned. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008).

## B. *Dormancy of Child Support Arrearages*

First, Cleland argues that the child support arrearages were dormant judgments under K.S.A. 60-2403. Cleland's argument requires interpretation of statutory provisions. Interpretation of a statute presents a question of law over which an appellate court has unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). A court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). When a statute is plain and unambiguous, a court does not speculate as to the legislative intent behind it, will not read the statute to add something not readily found in it, and need not resort to statutory construction. It is only when the statute's language or text is unclear or ambiguous that courts

move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent. *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

*K.S.A. 2008 Supp. 60-2403*

K.S.A. 2008 Supp. 60-2403(a)(1) outlines the time period when judgments become dormant as follows:

"Except as provided in subsection (b) or (d), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. When a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so."

K.S.A. 2008 Supp. 60-2403(a)(3) defines a "support enforcement proceeding" as follows:

"A 'support enforcement proceeding' means any civil proceeding to enforce any judgment for payment of child support or maintenance and includes, but is not limited to, any income withholding proceeding under the income withholding act, K.S.A. 23-4,105 through 23-4,118 and amendments thereto, or the interstate income withholding act, K.S.A. 23-4,125 through 23-4,137 and amendments thereto, any contempt proceeding and any civil proceeding under the uniform interstate family support act, K.S.A. 23-9,101 *et seq.*, and amendments thereto."

In 2007, the legislature modified subsection (b) of K.S.A. 60-2403 so that child support judgments, which were not void as of July 1, 2007, would no longer become dormant except as they related to a lien on real estate. See 2007 H.B. 2393. This amendment is contained in the current version of K.S.A. 2008 Supp. 60-2403(b) as follows:

"Except for those judgments which have become void as of July 1, 2007, no judgment for the support of a child shall be or become dormant for any purpose except as provided in this subsection. If a judgment would have become dormant

under the conditions set forth in subsection (a), the judgment shall cease to operate as a lien on the real estate of the judgment debtor as of the date the judgment would have become dormant, but the judgment shall not be released of record pursuant to subsection (a)."

### Trial Court's Decision

In determining that the child support judgments against Cleland were not dormant, the trial court did not discuss subsection (b) of K.S.A. 2008 Supp. 60-2403. Instead, the trial court focused on the 5-year period for dormancy under K.S.A. 2008 Supp. 60-2403(a)(1). The trial court determined that because 5 years had not elapsed between Thorne's December 31, 2007, motion for a hearing in aid of execution and the previous support enforcement or collection proceeding in this case, the child support judgments had not become dormant.

### Thorne's Argument

Thorne first maintains that the child support judgment against Cleland was not a void judgment as of July 1, 2007, and, therefore, cannot become dormant under K.S.A. 2008 Supp. 60-2403(b). Although the trial court did not base its decision on K.S.A. 2008 Supp. 60-2403(b), we may still consider Thorne's argument for affirming the trial court's decision. If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision. The reason given by the trial court for its ruling is immaterial if the result is correct. *In re Marriage of Bradley*, 282 Kan. 1, 8, 137 P.3d 1030 (2006).

Here, because the support enforcement proceeding was filed on August 28, 2002, the judgments had not become void (or even dormant) as of July 1, 2007. K.S.A. 2008 Supp. 60-2403(b) states that "[e]xcept for those judgments which have become void as of July 1, 2007, no judgment for the support of a child shall be or become dormant for any purpose except as provided in this subsection." Under K.S.A. 2008 Supp. 60-2403(b), because the child support judgments against Cleland were not void as of July 1, 2007, they are not dormant and can be collected from Cleland. The only limitation under K.S.A. 2008 Supp. 60-2403(b) is that the child

support judgments cannot operate as a lien on the real estate of Cleland as of the date the judgment would have become dormant.

As a result, the trial court's decision that the child support arrearages against Cleland were not dormant and the entry of judgment against Cleland in the amount of $9,952.89 for unpaid child support and interest should be affirmed.

### K.S.A. 2008 Supp. 60-2403(a)

Thorne also makes an argument that the child support judgment against Cleland was not dormant or void under K.S.A. 2008 Supp. 60-2403(a) because less than 5 years had elapsed between support enforcement proceedings.

Although we have determined that the child support arrearages are not dormant under K.S.A. 2008 Supp. 60-2403(b) and can be collected from Cleland, K.S.A. 2008 Supp. 60-2403(b) does not allow a lien on real estate as of the date the judgment would have become dormant. The record is unclear as to whether Cleland has any real estate on which the child support judgment could become a lien. Moreover, from the record, it appears that the parties have never argued that the child support arrearages operate as a lien on any real estate owned by Cleland. Out of an abundance of caution, however, we will determine whether the arrearages were dormant under K.S.A. 2008 Supp. 60-2403(a) and, therefore, whether they could operate as a lien on real estate.

### July 30, 2003, Income Withholding Order

The trial court looked at two filings in 2003 that it considered to be in the nature of support enforcement or collection proceedings. The first was the July 30, 2003, withdrawal of the prior income withholding order, which was filed after Cleland took over residential custody of Jeremy. In determining that the withdrawal of the income withholding order was in the nature of a collection proceeding, the trial court stated:

"K.S.A. 60-2403(a)(3) defines, 'any civil proceeding to enforce any judgment for payment of child support', filed in any county, as preserving unpaid judgments. Public policy does not encourage the dormancy and extinguishment of judgments. The withdrawal of an income withholding order, due to the change in residence of a child, is nevertheless in the nature of a collection proceeding. It was to simply

give effect to the parties' own agreement — that Respondent's arrears would be repaid at the rate of $100.00 per month by foregoing child support from Petitioner."

Although the July 30, 2003, order was captioned an "Income Withholding Order/Modification Order," it was not filed to enforce the child support obligation that Cleland owed to Thorne. Instead, the purpose of the order was to let the employer know that no money should be withheld from Cleland's income for child support payments. This order was not in the nature of a collection proceeding as there was no attempt to collect Cleland's child support obligation to Thorne.

*February 23, 2003, Agreed Journal Entry*

The next filing that the trial court considered to be an enforcement proceeding was the February 23, 2003, agreed journal entry modifying the parties' child support obligations after Jeremy went to live with Cleland. The agreed journal entry terminated Cleland's obligation to pay child support effective November 1, 2002. In addition, Cleland and Thorne agreed that "neither party shall pay child support to the other based on the parties' agreement to each provide in-kind support to the minor child." Moreover, the parties agreed that Cleland was in arrearage in child support for which he would receive a credit of $100 a month for taking residential custody of Jeremy starting November 1, 2002.

In determining that the agreed journal entry was an enforcement proceeding, the trial court stated:

"The court is of the opinion that the agreement of the parties themselves on February 23, 2003, that Mr. Cleland's child support arrears would be repaid at the rate of $100.00 per month by not seeking child support from Ms. Thorne is an enforcement proceeding. This agreement resulted in the withdrawal of the existing income withholding order. The transaction was a child support collection proceeding. The next collection proceeding was commenced December 31, 2007."

As a result, the trial court determined that no child support judgments against Cleland were dormant.

We agree with the trial court's determination as to the February 23, 2003, agreed journal entry. Although this agreed journal entry

was not the standard enforcement or collection proceeding that is filed in child support enforcement cases, the agreed journal entry, like other support enforcement proceedings, assisted a parent in obtaining satisfaction of the child support arrearages. The agreed journal entry contained the parties' agreement that Cleland was in arrears on his child support obligation to Thorne and went so far as to reduce Cleland's child support arrearages by $100 a month. By acknowledging Cleland's arrearage, the agreed journal entry allowed Cleland to begin repaying his child support arrearages in the form of a $100 per month credit. Moreover, the agreed journal relieved Thorne of any obligation to pay child support while Cleland served as the residential parent and his arrearages continued to exist.

In summary, the February 23, 2003, agreed journal entry was in the nature of a support enforcement proceeding because it included an agreement by which Cleland's child support arrearages were to be repaid in the form of a $100 credit against the arrearages each month. Because less than 5 years had elapsed between the filing of the February 23, 2003, agreed journal entry and the filing of the December 31, 2007, request for a hearing in aid of execution, the child support arrearages were not dormant judgments under K.S.A. 2008 Supp. 60-2403(a).

*Revivor of Dormant Judgments*

Cleland makes an argument in his appellate brief that Thorne should not be allowed to revive the dormant child support judgments against him because she was not the real party in interest. Nevertheless, because the judgments are not dormant, it is unnecessary to address Cleland's argument on this issue.

*C. Doctrine of Laches*

Next, Cleland argues that Thorne's claim for unpaid child support should be barred by the doctrine of laches. The trial court's application or denial of the doctrine of laches is reviewed for an abuse of discretion. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 388, 22 P.3d 124 (2001).

Our Supreme Court has explained the doctrine of laches as follows:

"The doctrine of laches is an equitable principle designed to bar stale claims. When a party neglects to assert a right or claim for an unreasonable and unexplained length of time, and the lapse of time and other circumstances cause prejudice to the adverse party, relief is denied on the grounds of laches. We have stated that the mere passage of time is not enough to allow a party to invoke the doctrine. For laches to apply, the court must consider the circumstances surrounding the delay and whether there was any disadvantage to the other party caused by that delay. [Citation omitted.]" *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 725, 840 P.2d 1107 (1992).

Cleland maintains that the doctrine of laches applied in this case because Thorne did nothing to collect the child support arrearages for a period in excess of 5 years. Moreover, Cleland asserts that Thorne did not come into court with clean hands because she had failed to obey the court orders requiring her to pay a large percentage of Jeremy's medical bills and to share the income tax exemption for Jeremy.

To support his argument on this issue, Cleland cites *In re Marriage of Jones*, 22 Kan. App. 2d 753, 921 P.2d 839, *rev. denied* 260 Kan. 993 (1996), and *In re Marriage of Burton*, 29 Kan. App. 2d 449, 28 P.3d 427, *rev. denied* 272 Kan. 1418 (2001). Nevertheless, both *Jones* and *Burton* are readily distinguishable. *Jones* involved the application of the doctrine of laches to a revivor action. Here, because the child support judgments were not dormant, there is no revivor action. In *Burton*, the mother of the minor child had accepted the amount of child support that the father had paid for nearly 3 years, which this court specifically stated "was more than adequate for one child." 29 Kan. App. 2d at 453. Further, the amount of child support that the father had paid was without the benefit of a court order or the proper calculation under the Kansas Child Support Guidelines. Here, however, the amount that Cleland was supposed to pay was court-ordered, and there was no indication that Thorne had accepted a lower amount than what was court-ordered. Moreover, there is no indication that the amount she had sporadically received from Cleland "was more than adequate for one child." Instead, the record shows that during the time period that Jeremy lived with Thorne, numerous efforts, many of which were unsuccessful, were made to enforce Cleland's court-ordered child support obligation.

In rejecting Cleland's argument on this issue, the trial court stated:

"Respondent claims he is entitled to equitable relief — that is, fairness and justice should allow him to avoid paying his child support obligation. The Court's docket sheet shows how Respondent was tracked from job to job, trying to collect child support. He accrued arrears of over $10,000.00 before his child support obligation terminated. The application for equitable relief requires clean hands. 'The clean hands doctrine provides that no person can obtain affirmative relief in equity with respect to a transaction in which that person has been guilty of inequitable conduct.' [In re Johnson], 24 Kan. App. 2[d] 631, 635, 950 P.2d 267 (1997). A parent who avoids paying child support fails that requirement."

The trial court further noted that Cleland had incurred a substantial child support arrearage during Jeremy's minority and that there had been repeated efforts by Thorne and the trustees of two counties to collect child support from Cleland. Despite those efforts, the child support arrearage had never been fully paid.

We find no abuse of discretion in the trial court's decision. Although Cleland now attempts to use Thorne's failure to pay her portion of Jeremy's medical bills and the fact that she had claimed Jeremy as a dependent on her 1998 income tax return, the record indicates that Cleland had done nothing to pursue reimbursement for these items. Moreover, the transcript from the June 2008 hearing further indicates that Cleland had not reimbursed Thorne for his portion of some of Jeremy's medical bills. On the other hand, the record establishes that Thorne and the trustees had attempted to collect child support payments from Cleland over a period of many years. Despite all of their efforts in chasing Cleland from job to job, he was able to incur over $10,000 in unpaid child support. Although there were no support enforcement filings made for a little over 5 years, the legislature has now made clear that this lapse of time will not cause a judgment to become dormant and will not bar collection proceedings. See K.S.A. 2008 Supp. 60-2403(a). Under the facts present here, the trial court did not abuse its discretion in refusing to apply the doctrine of laches.

### D. Award of Attorney Fees

Finally, Cleland contends that the trial court abused its discretion in awarding attorney fees to Thorne.

An issue involving a trial court's authority to award attorney fees is a question of law over which appellate review is unlimited. *Idbeis v. Wichita Surgical Specialists*, 285 Kan. 485, 490, 173 P.3d 642 (2007). Nevertheless, where the trial court has authority to grant attorney fees, its decision is reviewed under the abuse of discretion standard. *Tyler v. Employers Mut. Cas. Co.*, 274 Kan. 227, 242, 49 P.3d 511 (2002).

Here, because the trial court had the authority to award attorney fees under K.S.A. 2008 Supp. 60-1610(b)(4), which states that "[c]osts and attorney fees may be awarded to either party as justice and equity require," its decision is reviewed for abuse of discretion.

The trial court has wide discretion to determine the amount and the recipient of an allowance of attorney fees. When reviewing an award of attorney fees, the appellate court does not reweigh the testimony or evidence or reassess the credibility of witnesses. An award of attorney fees will not be set aside on appeal when supported by substantial competent evidence. *Burton*, 29 Kan. App. 2d at 454. "Fees which are not supported by 'meticulous, contemporaneous time records' " identifying the specific tasks being billed should not be awarded. *Davis v. Miller*, 269 Kan. 732, 748, 7 P.3d 1223 (2000).

In the determination of the reasonableness of attorney fees, Rule 1.5(a)(2008 Kan. Ct. R. Annot. 448) of the Kansas Rules of Professional Conduct provides that the following eight factors should be considered by the court:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

Our Supreme Court has urged consideration of these factors in determining the reasonableness of attorney fees. See *Davis*, 269 Kan. at 751.

Here, Thorne's attorney submitted an attorney fees statement for $1,806. The statement detailed 4.3 hours that Thorne's attorney spent on a telephone conference with Cleland's former attorney, on travel to and from Seneca and his appearance at the hearing in aid of execution; and on conferences with the district court trustee and another individual on February 27, 2008. The statement detailed an additional 4.3 hours that Thorne's attorney spent on traveling to and from Seneca and his appearance at the hearing on June 25, 2008. Thorne's attorney billed the hours at $210 an hour. The trial court awarded $1,000 in attorney fees to Thorne.

Cleland contends that no evidence was presented to the trial court regarding the time and services expended by Thorne's attorney in this case. Cleland maintains that the trial court could not consider the attorney fees statement as evidence without proper foundation proof.

Nevertheless, it is obvious that the trial court did not take Thorne's attorney statement at face value as to the amount that should be assessed against Cleland. Instead, the trial court used its experience and expertise in determining the $1,000 attorney fees amount that Cleland was ordered to pay. We point out that the trial judge who awarded attorney fees was also the trial judge who presided over both the February 27, 2008, and the June 25, 2008, hearings for which Thorne requested attorney fees. That trial judge was in the best position to determine the amount of time expended by Thorne's attorney, a reasonable value for attorney fees, and the amount that should be assessed against Cleland.

The trial court is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value. An appellate court is also an expert on the reasonableness of attorney fees. Nevertheless, an appellate court does not substitute its judgment for that of the trial court on the amount of the attorney fee award unless in the interest of justice the appellate court disagrees with the trial court. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006).

Although the trial court did not expressly go through the factors in Supreme Court Rule 1.5(a) in awarding attorney fees, the trial court noted the following concerning Cleland's conduct in this case:

"Mr. Cleland incurred substantial child support arrears during the child's minority. There were repeated efforts by Petitioner, and the trustees of two (2) counties, to collect child support from Respondent. Years have now passed, the child support has never been fully paid."

"At the hearing in aid of execution held by this Court on February 27, 2008, Respondent failed to appear despite being under Court order to do so; nevertheless, Petitioner and her counsel appeared at significant expense to Petitioner. A second hearing was necessary, at more cost to Petitioner."

Based on the trial court's reasoning, the trial court was within its discretion to award attorney fees as "justice and equity require" under K.S.A. 2008 Supp. 60-1610(b)(4). Moreover, the $1,000 attorney fees award was a reasonable amount based on the fact that Thorne's attorney had to travel to Seneca for two hearings and that Cleland did not even show up for one of the hearings. Accordingly, there was no abuse of discretion in the trial court's award of attorney fees to Thorne.

Affirmed.