No. 120,897

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DEBORAH S. DOUD,
*Appellant*,

and

WILLIAM M. MODRCIN JR.,
*Appellee*.

SYLLABUS BY THE COURT

1.

Final judgments are not enforceable in perpetuity. A judgment becomes dormant if it has neither been enforced nor renewed for five years. A dormant judgment can be revived if, within two years, a party strictly complies with the procedures set forth in K.S.A. 2019 Supp. 60-2403 and K.S.A. 60-2404. If not, a court must release the judgment, rendering it absolutely extinguished and unenforceable.

2.

Only a final judgment, i.e. a final determination of the parties' rights in an action, can become dormant or be extinguished. Any other order that adjudicates fewer than all the claims does not end the action and may be revised at any time before a final judgment is entered.

3.

Whether a district court's order is a final judgment is a legal question appellate courts review de novo.

4.

Laches is an equitable doctrine meant to bar stale claims. Laches applies when a party brings a claim after an unreasonable and unexplained length of time, and that delay, combined with other circumstances, prejudices the defending party.

5.

Because laches arises in equity, appellate courts review a district court's findings regarding laches for an abuse of discretion. A court abuses its discretion when it bases its decision on a mistake of fact or mistake of law, or when no reasonable person would agree with the court's decision.

6.

Though there may be instances when laches would warrant denying enforcement of an otherwise effective court order, district courts should exercise caution when using equitable principles to extinguish legal rights—particularly when the timeframe for enforcing those rights has been defined by statute. Under such circumstances, a court analyzing whether laches applies should consider in its reasonableness and prejudice assessments the statutory landscape defining the legal enforceability of court orders.

7.

When a matter has been settled by a mediation agreement and incorporated into the divorce decree, a court generally cannot modify that order unless the parties consent or the agreement permits modification. The interpretation of a journal entry approving a settlement agreement is a question of law over which we exercise unlimited review.

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed December 23, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Ronald W. Nelson*, of Ronald W. Nelson, PA, of Overland Park, for appellant.

2

*Gregory A. Dean*, of Overland Park, for appellee.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

WARNER, J.: Under Kansas law, a person who has obtained a final judgment must take steps to enforce or collect upon that judgment within a certain time; otherwise, the party's enforcement rights are extinguished. But these enforcement rights only arise when a judgment is *final*—i.e., definitively decides the merits of all pending claims. Until that time, a court always has the power to revisit and modify its previous rulings.

The case before us arises at the intersection of these principles. Deborah Doud and William Modrcin were divorced in 2007. In 2008, the district court entered two orders dividing most of their property. But in accordance with the parties' mediation agreement, the court left the division of their furniture and other items of personal property unresolved. The primary question before us is whether the court had the power to enforce the 2008 property-distribution orders in 2015, or whether—as the district court ruled— the passage of time rendered the 2008 orders unenforceable as a matter of law or equity.

We hold that because the 2008 orders left questions unresolved, they were not final judgments under Kansas law. Thus, the district court erred when it found the orders were unenforceable. Neither do we find the district court's conclusion persuasive that laches bars Doud's claims, as the court failed to consider Doud's legal right to pursue relief. We therefore reverse that portion of the district court's decision and remand this case so the court may consider the merits of Doud's requests. But we agree with the district court that it had the authority to divide other property, the parties' joint University of Kansas Williams Education Fund account, in light of the changing circumstances since the parties' divorce. We thus affirm in part, reverse in part, and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

Doud and Modrcin were divorced in 2007. Their divorce involved a bifurcated proceeding; after the court entered their divorce decree, the former spouses attended a mediation in an effort to resolve lingering custody questions and how their various property should be divided. As a result of the mediation, Doud and Modrcin signed a settlement agreement that created various duties and obligations. In July 2008, the district court entered a journal entry that largely incorporated the terms of that agreement. This appeal concerns two portions of that July 2008 journal entry: the division of the parties' personal property and the disposition of their University of Kansas Williams Education Fund (Williams Fund) account.

To divide their personal property, Doud prepared a list of the important pieces of marital and nonmarital personal property. Based on that list, the parties identified items each would receive. But the list did not include all of the former spouses' property, leaving unassigned miscellaneous furniture, Christmas decorations, and various pieces of Jayhawk memorabilia. The journal entry therefore included the following order as to how that unlisted property would be divided:

"With respect to the division of the parties' household furniture and furnishings, that shall be divided as set forth on the attached Exhibit B. . . . All other items not set forth in the attached Exhibit B that have not been divided will be set forth on a list prepared by both Petitioner and Respondent separately with those separate lists being transmitted to the Court by way of an email. Upon receipt of the email lists from the parties, the Court will contact the attorneys of record to address the same."

The journal entry further indicated that the district court would "reserve jurisdiction over the division of the household furniture and furnishings, family photos and videos if the parties are unable to resolve the division and copying of those items."

It is unclear from the record whether either party contacted the court about the unresolved items of personal property. But the court did not issue any additional orders on the matter after the July 2008 journal entry, nor did it indicate that the remaining matters of property distribution had been resolved.

As for their Williams Fund account, the court's journal entry indicated Doud and Modrcin agreed to continue holding that account jointly instead of dividing it. The journal entry, in accordance with the parties' agreement, stated that the parties would each contribute half of their agreed-upon annual contribution. The journal entry noted the court would "retain[] jurisdiction to resolve this issue if the parties are unable to agree upon an annual contribution amount" and established the procedure for addressing such disagreements. The journal entry also stated the court would "retain[] jurisdiction to resolve any disputes regarding these agreements, including those arising should the Williams Fund and/or Ticket Office be unable to implement this agreement."

Less than two weeks after the district court issued the July 2008 journal entry, Modrcin filed a motion to alter or amend the court's order. He asked the court to revisit, among other matters, the Williams Fund arrangement, indicating the journal entry did not accurately reflect the parties' intended handling of that account. After a hearing, the court altered its previous disposition in an October 2008 journal entry. The October 2008 journal entry clarified that Doud and Modrcin would alternate receipt of Williams Fund correspondence on an annual basis (and keep the other person informed of any information received) and discussed the distribution of football and basketball tickets and seat locations at those games. At the end of the October 2008 journal entry, the court indicated that "in all other respects the Journal Entry of July 23, 2008 shall remain in full force and effect as the final judgment of the Court."

Other than a stipulated order to direct the new ownership of certain bank accounts, nothing was filed and no appearances were made in the parties' divorce case for the next

5

6 1/2 years. Then in July 2015, Doud filed a motion to enforce the 2008 journal entries. She alleged Modrcin violated the court's order in four ways: failing to pay his share of their children's college expenses, delaying in removing her name from the mortgage, refusing to discuss the distribution of unlisted personal property, and failing to pay his share of the annual Williams Fund contribution.

Modrcin responded by arguing the July 2008 journal entry had been extinguished and could no longer be enforced as a matter of law. He pointed out that Doud had not attempted to enforce the order in the five years after it had been entered, and she had not revived that order in the following two years. Alternatively, he argued that the equitable principle of laches barred enforcement of the order since so much time had passed.

The district court initially ruled that the July 2008 journal entry was not a final judgment, so Doud's ability to enforce that order had not been extinguished. Modrcin moved the court to reconsider its ruling, arguing the journal entry had extinguished and laches precluded enforcement. But in the event the court found that it could enforce or modify its previous order, he asked the court to divide the Williams Fund account instead of having the parties share a joint account.

After an April 2018 evidentiary hearing, the district court reversed its earlier decision and concluded the October 2008 journal entry was an enforceable final judgment. The court explained that its previous ruling "may have focused too much on the July 2008 Journal Entry, which was not a final judgment, in isolation and not in conjunction with the hearings, communications with the court, transcripts and October 2008 rulings from an aggregate perspective." The court noted that the parties had "conducted themselves in a manner consistent with finality and accepted all benefits of the Journal Entry, for almost 7 years before any formal motion was filed with the court" and that many items of personal property had been distributed according to the terms of

6

the July 2008 journal entry. And the court found that although questions of property distribution remained unresolved in the July 2008 journal entry,

> "no further lists [of property] were sent to the court and the parties appeared before the court arguing remaining issues of the case in August of 2008 . . . . Therefore, it is reasonable to conclude that the court did not deem any further property division warranted at the time it made its final entry of judgment in October of 2008, which was signed by counsel for both parties."

Having found the October 2008 journal entry was a final, enforceable judgment, the court turned to the question of dormancy. The court found that neither party had sought to enforce the judgment in the five years after it had been entered, nor had anyone filed a renewal affidavit under K.S.A. 60-2403. The court concluded the October 2008 judgment became dormant in October 2013. And because neither party sought to revive that judgment—a specific, statutory procedure—in the two years that followed, the judgment had been extinguished and could no longer be executed upon. Finally, the court observed that "[e]ven if dormancy had not precluded relief, the doctrine of laches would have" as a result of the "unreasonable and unexplained . . . lapse of time" between the October 2008 journal entry and Doud's effort to enforce that judgment in July 2015.

Since the journal entry had been extinguished, the court denied Doud's college expense, unlisted property, and mortgage claims. But the court found it could reach the merits of the Williams Fund disagreement since the court had specifically retained jurisdiction over that question. After considering both parties' arguments, the court granted Doud some of the relief she sought regarding past contributions but denied others. And the court granted Modrcin's motion to divide the Williams Fund account going forward, noting the reduced stress, frustration, and litigation accompanying the division would exceed the benefits of a joint account. Doud appeals.

DISCUSSION

Doud challenges the district court's decision in two respects. She argues the court erred by concluding the 2008 journal entry is extinguished because it never became a final judgment. And if the journal entry is an extinguished judgment, the court could not alter the Williams Fund provision as it is also extinguished.

Reviewing the parties' arguments, we find the district court erred when it found the October 2008 journal entry was a final judgment. Thus, the dormancy statute does not prevent Doud's effort to enforce that nonfinal order. We further conclude that when a person has a legal right to seek enforcement of a court's order, as Doud does here, a court must take those legal rights into consideration before applying the equitable principle of laches. Finally, we conclude the court did not abuse its discretion in dividing the Williams Fund account.

1. *The district court erred when it ruled Doud's enforcement motion was untimely as a matter of law and as a matter of equity.*

When a court enters a final judgment in a person's favor against another, that judgment has numerous legal ramifications. For example, a money judgment acts as a lien upon a person's real property and must be paid before the judgment debtor receives any proceeds from the sale of that property. See K.S.A. 60-2202. And 14 days after judgment is entered, a person who benefits from that judgment may seek to collect the money he or she is owed or take other steps to enforce the judgment. See K.S.A. 2019 Supp. 60-262(a).

But final judgments are not enforceable in perpetuity. Rather, a judgment becomes dormant—meaning, it has no binding legal effect and cannot be enforced—if it has neither been enforced nor renewed for five years. K.S.A. 2019 Supp. 60-2403(a)(1); see *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 293 Kan. 633, 640-41, 270 P.3d 1074 (2011), *cert. denied* 568 U.S. 928 (2012). A dormant judgment can be revived—i.e.,

rendered enforceable again—if a party strictly complies with the procedures set forth in K.S.A. 2019 Supp. 60-2403 and K.S.A. 60-2404 within the two years after it has become dormant. See *Associated Wholesale Grocers*, 293 Kan. at 646. A court must release a judgment that has remained dormant for two years. K.S.A. 2019 Supp. 60-2403(a)(1); K.S.A. 60-2404. A released judgment is "absolutely extinguished and unenforceable." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 1, 815 P.2d 97 (1991).

When a court incorporates a mediation agreement into a divorce decree, the agreement becomes a binding court order under Kansas law. *In re Estate of McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013) (citing *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 430, 747 P.2d 187 [1987]). But not every court order is a judgment that triggers the provisions of Kansas' dormancy statutes. Though courts often use the term "judgment" loosely, Kansas law specifically defines a judgment as the "final determination of the parties' rights in an action." K.S.A. 2019 Supp. 60-254(a). It is only this form of judgment, which courts often describe as a "final judgment," that can become dormant or be extinguished. See K.S.A. 2019 Supp. 60-2403(c). Any other order that "adjudicates fewer than all the claims . . . does not end the action . . . and may be revised at any time" before a final judgment is entered. K.S.A. 2019 Supp. 60-254(b).

The district court ruled that Doud's motion to enforce provisions of the July 2008 journal entry was untimely for two reasons. First, the court found that the October 2008 journal entry (which incorporated by reference the July 2008 order) was a final judgment whose enforcement was subject to the dormancy and revivor statutes. The court found that judgment had gone dormant because Doud had not sought to enforce it before 2013. And because Doud had not complied with the statutory revivor procedures during the following two years, the dormant judgment had been extinguished. The court also found that the equitable principle of laches rendered the 2008 orders unenforceable. We analyze these arguments in the order the district court considered them.

    1.1.    *The July 2008 and October 2008 journal entries are not final judgments subject to the dormancy and extinguishment statutes.*

Whether a district court's order is a final judgment is a legal question we review de novo. *Einsel v. Einsel*, 304 Kan. 567, Syl. ¶ 2, 374 P.3d 612 (2016). To answer this question, courts analyze whether the order "finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Plains Petroleum Co. v. First Nat. Bank of Lamar*, 274 Kan. 74, Syl. ¶ 4, 49 P.3d 432 (2002). A judgment "should be complete and certain in itself." *Bandel v. Bandel*, 211 Kan. 672, Syl. ¶ 3, 508 P.2d 487 (1973). And its format should indicate the court's decision "with reasonable clearness" so the parties can "ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement." 211 Kan. 672, Syl. ¶ 3.

Applying these principles here, there can be little question that the district court's July 2008 order left unresolved questions relating to the parties' division of personal property. The court specifically retained jurisdiction over these unresolved questions. As such, the July 2008 order did not "finally decide[] and dispose[] of the entire merits of the controversy." *Plains Petroleum Co.*, 274 Kan. 74, Syl. ¶ 4; see *Kaelter v. Sokol*, 301 Kan. 247, 340 P.3d 1210 (2015) (holding no final judgment existed when the district court, which had issued an order stating it would determine the extent of certain expenses, had not yet resolved those expenses); *In re Marriage of Lida*, No. 90,411, 2004 WL 719888 (Kan. App.) (unpublished opinion) (finding no judgment existed when journal entry required appraisal of certain pieces of property to equalize property distribution and the parties failed to do so), *rev. denied* 278 Kan. 845 (2004). And the district court made no finding at any time in this case that the July 2008 order should be severed and treated as a final judgment under K.S.A. 2019 Supp. 60-254(b). Thus, the July 2008 journal entry was not a final judgment.

10

This unresolved property-division question remained after the court filed its October 2008 journal entry. The court's October order addressed the questions presented in Modrcin's motion to alter or amend the July journal entry. But neither Modrcin's motion nor the October order took up the property-division issue. In fact, it appears from Doud's July 2015 motion that this issue was *never* resolved and remains in dispute. Thus, neither order rendered in 2008 was a final judgment subject to dormancy and extinguishment.

Modrcin argues that the October 2008 journal entry implicitly resolved the property-division question because the district court stated in that order that the July 2008 journal entry was a final judgment. But we disagree. The district court's statement in the October 2008 order—that the provisions of the July 2008 order unaltered by its October decision "shall remain in full force and effect as the final judgment of the Court"—does not control our analysis. A court's erroneous indication that a decision was or was not a final judgment does not make it so. Cf. *City of Salina v. Star B, Inc.*, 241 Kan. 692, 696, 739 P.2d 933 (1987) (appellate court is not bound by district court's statement that an order is a final judgment "pursuant to K.S.A. 60-254[b]" without making the express findings required under that statute). Nor does it alter the focus of our analysis—whether a court's order leaves open some question to be resolved in the future, as the July 2008 journal entry did here.

In this way, this case is readily distinguishable from our decision in *In re Marriage of Cotter*, No. 104,466, 2011 WL 2535011 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 943 (2012). The question in *Cotter* was whether a proposed addendum to a division of assets schedule had been incorporated into a separation agreement. We found it had not, emphasizing that the addendum was not read into the record, that the parties made no recommendations to insert the addendum's language into the agreement, and that the parties agreed to a divorce decree omitting the addendum's provisions. 2011 WL 2535011, at *2-4. Here, the unlisted property provision

11

was always part of the parties' mediation agreement. Doud and Modrcin's failure to address the issue at the hearing memorialized by the October journal entry does not indicate they either resolved or abandoned it.

Because the open question regarding the parties' distribution of personal property remained unresolved by the district court's July and October 2008 orders, neither of those decisions were final judgments. As such, neither order was subject to dormancy or extinguishment under K.S.A. 2019 Supp. 60-2403 and K.S.A. 60-2404. Because no final order had been entered in the case, the district court erred when it refused to enforce its previous order on dormancy and extinguishment grounds.

1.2. *The district court abused its discretion when it found laches barred Doud from enforcing the court's previous orders.*

At the end of its ruling, the district court found that "[e]ven if dormancy had not precluded relief, the doctrine of laches would have." Laches is an equitable doctrine meant to bar stale claims. *In re Marriage of Jones*, 22 Kan. App. 2d 753, Syl. ¶ 1, 921 P.2d 839, *rev. denied* 260 Kan. 993 (1996). The doctrine may apply when a party brings a claim after an unreasonable and unexplained length of time, and that delay, combined with other circumstances, prejudices the defending party. 22 Kan. App. 2d 753, Syl. ¶ 1.

Because laches arises in equity, appellate courts review a district court's findings regarding laches for an abuse of discretion. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 388, 22 P.3d 124 (2001). A court abuses its discretion when it bases its decision on a mistake of fact or mistake of law, or when no reasonable person would agree with the court's decision. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, Syl. ¶ 4, 318 P.3d 672 (2014).

As a preliminary matter, Modrcin argues that Doud did not explicitly address the district court's laches argument in her opening brief and thus abandoned her claim. In

general, issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). But here, we agree with Doud that much of her reasoning relating to her analysis of the district court's dormancy and extinguishment analysis also applies to the court's laches finding—particularly given the district court's emphasis on its dormancy ruling. We find this overlap, combined with Doud's discussion of laches in her reply brief, is sufficient to present the claim on appeal.

Laches is a flexible principle. But while district courts enjoy considerable discretion in applying equitable doctrines, this discretion is not unbounded. The Supreme Court of the United States has "cautioned against invoking laches to bar legal relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014). For this reason, courts have generally held that laches cannot be used to bar claims incurred within a limitations period set by statute. See *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. __, 137 S. Ct. 954, 963-64, 197 L. Ed. 2d 292 (2017). And Kansas courts have held that laches should not be invoked to circumvent an effort to enforce certain rights, such as unpaid child-support obligations for minor children. See *Strecker v. Wilkinson*, 220 Kan. 292, 298, 552 P.2d 979 (1976).

Here, the district court's laches analysis is confined to one paragraph—a sharp contrast compared with the court's lengthy dormancy analysis. In that paragraph, the court summarily found that Doud's delay in seeking recourse from the court on the various matters she raised in the 2008 judgment was unreasonable. But we are not convinced that this conclusion can be separated from the court's erroneous legal conclusion regarding dormancy and extinguishment. For example, the court observed that Doud had testified that her delay in filing her enforcement motion was caused, in part, by her anxiety and depression, as well as her efforts to pay for her son's college expenses. The court acknowledged these explanations but nevertheless found the delay unreasonable because Doud is an attorney "frequently involved in projects requir[ing] intimate details and the application of the law." Thus, even though the district court

introduced its laches finding as an alternative finding, the court's dormancy ruling influenced its analysis.

In this way, this case presents a different question from *Clark v. Chipman*, 212 Kan. 259, 510 P.2d 1257 (1973), which the district court cited in its ruling. In *Clark*, the court held that laches prevented an ex-wife from seeking reimbursement for amounts she incurred raising the couple's children. 212 Kan. at 269. But see K.S.A. 2019 Supp. 60-2403(b) (past-due child support judgments, as of July 1, 2007, do not become dormant or unenforceable). Though *Clark* referenced the fact that the court's divorce decree was not a final judgment, that factor weighed only slightly in the court's analysis. Rather, the court focused on the absence of reasons for the delay. If anything, *Clark*—and the decisions of the Kansas Supreme Court that have reached the opposite conclusion— demonstrates that laches "depends upon the special circumstances of each case." *Peters v. Weber*, 175 Kan. 838, 844, 267 P.2d 481 (1954) (concluding an ex-husband may not invoke laches to bar the enforcement of a child support obligation, even though 12 years had passed since the court's support order); see also *State ex rel. SRS v. Cleland*, 42 Kan. App. 2d 482, 493, 213 P.3d 1091 (2009) (laches cannot be used to prevent enforcement of non-dormant child support obligation).

Our review of caselaw in Kansas and across the country demonstrates that the outcome in *Clark* is the exception, not the rule. Though there may be instances when laches may warrant denying enforcement of an otherwise effective court order, district courts should exercise caution when using equitable principles to extinguish legal rights—particularly when the timeframe for enforcing those rights is defined by statute. See *SCA Hygiene Products Aktiebolag*, 137 S. Ct. at 963-64. Here, the Kansas Legislature has indicated that a district court has the power to consider and revise a nonfinal order at any time before a final judgment is entered in the case. K.S.A. 2019 Supp. 60-254(b). And after a court enters a final judgment, the timeframe for enforcing that judgment is also defined by statute. K.S.A. 2019 Supp. 60-2403. Under such

14

circumstances, a court analyzing whether laches applies should consider in its reasonableness and prejudice assessments the statutory landscape defining the legal enforceability of the court order in question.

A court abuses its discretion when its analysis turns on an error of law. See *In re Marriage of Traster*, 301 Kan. 88, 110-11, 339 P.3d 778 (2014). Under the particular facts of this case, we find that the district court abused its discretion in finding that laches barred Doud's enforcement action because that finding was infused by the court's legal error regarding dormancy and extinguishment. If the court chooses to address this issue anew on remand, it must give due consideration to the parties' legal rights and expectations—particularly those based on Kansas statutes that define when parties may enforce court orders and judgments.

We acknowledge that despite the district court's ruling that the 2008 orders had been extinguished, the court continued to evaluate portions of Doud's claims. But our review of the record reveals that the district court's erroneous finding regarding extinguishment permeated all aspects of its analysis with the exception of the Williams Fund account, which we address next. We therefore do not analyze the merits of any of Doud's claims but rather reverse the district court's rulings that Doud's motion was untimely and remand for consideration of these issues in light of our decision.

2. *The district court did not err when it divided the parties' Williams Fund account.*

Finally, Doud argues that the district court erred when it severed the parties' joint tenancy in the Williams Fund account. Because we have concluded that the July and October 2008 journal entries were nonfinal orders, we need not consider the merits of the district court's conclusion that the Williams Fund account was not subject to the dormancy and revivor statutes. But see *Associated Wholesale Grocers*, 293 Kan. at 644-

15

47 (dormancy does not hinge on the parties' intent, but on whether parties have complied with statutory requirements regarding the enforcement or renewal of a final judgment).

When a matter has been settled by a mediation agreement and incorporated into the divorce decree, a court generally cannot modify that order unless the parties consent or the agreement permits modification. K.S.A. 2019 Supp. 23-2712(b). Modrcin asked the court to divide the parties' Williams Fund account—and modify the existing arrangement—in his 2017 motion to alter or amend the district court's initial findings regarding dormancy. Doud has not consented to Modrcin's request. Thus, the controlling question is whether the October 2008 order permits the court to take this action.

As we have previously noted, the interpretation of a written journal entry approving a settlement agreement is a question of law over which we exercise unlimited review. See *Einsel*, 304 Kan. 567, Syl. ¶ 2; *In re Estate of McLeish*, 49 Kan. App. 2d at 255. The relevant portion of the Williams Fund provision in the court's October 2008 journal entry states, in part:

> "With respect to the University of Kansas Williams Education Fund, (hereafter Williams Fund), the parties retain equal interests in their existing account as joint tenants with right of survivorship. The parties agree to annually contribute one-half of any agreed-upon contribution to the Williams Fund up to and not to exceed a total of $2,500.00. The Court retains jurisdiction to resolve this issue if the parties are unable to agree upon an annual contribution amount. The parties are directed to email the Court regarding any dispute with their suggested contribution amount. The Court will resolve this dispute by emailing its ruling directly back to the parties.
>     . . . .
>     ". . . *The Court retains jurisdiction to resolve any disputes regarding these agreements, including those arising should the Williams Fund and/or Ticket Office be unable to implement this agreement.*" (Emphasis added.)

16

We agree with Modrcin that this provision contemplates that the court has the ability to alter the disposition of this property. See *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, 965, 967, 911 P.2d 192 (1996) (settlement agreement stating the court retained jurisdiction to revise maintenance granted court continuing jurisdiction). Doud argues that in severing the joint Williams Fund account, the court read its authority too broadly. She asserts that the Williams Fund provision in the court's orders addresses several details, including setting a yearly contribution amount, sharing correspondence, and distributing tickets, and the reference to "any disputes regarding these agreements" only authorizes a court to address disputes arising from these details. But we disagree. The parties' agreement, which was incorporated into the court's July and then October 2008 orders, gave the court broad authority to "resolve any disputes regarding [the parties' Williams Fund] agreements." It did not limit the remedies available to the court to resolve those questions.

The district court did not err when it modified its previous order regarding the Williams Fund account. The district court noted that over the years, Doud and Modrcin encountered frequent issues in jointly managing the account. Doud enumerated several of these disputes in her original enforcement motion, documenting disagreements that arose virtually every year since 2008. Though the court could address these issues each year as they arose, we find the court's conclusion eminently reasonable: it makes more sense to terminate the joint tenancy and allow each party to maintain his or her separate account in the future. Though the parties may have been able to obtain better seats at sporting events with a combined contribution than either might individually, we cannot say the court erred when it found separate accounts preferable to their previous arrangement. We therefore affirm the court's decision as to that property.

The decision of the district court is affirmed in part, reversed in part, and remanded with directions.