NOT DESIGNATED FOR PUBLICATION

No. 117,930

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PACKAGING SYSTEMS AND ENTERPRISES, INC.,
*Appellee*,

v.

OPERATIONAL SOLUTIONS, INC.;
OPERATIONAL SERVICES, LLC;
KENT GOSS, JOHN DOE I-X;
ABC PARTNERSHIP I-X; and
XYZ CORPORATION I-X,
*Appellants*.

MEMORANDUM OPINION

Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed June 8, 2018.
Affirmed.

*Anthony L. Gosserand*, of Van Osdol, PC, of Kansas City, Missouri, for appellants.

*Keith Witten* and *Carol Z. Smith*, of Gilliland & Hayes, LLC, of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Packaging Systems and Enterprises, Inc., a New Jersey Corporation, (Packaging Systems) filed a complaint in the Superior Court of New Jersey, Law Division, Cumberland County, against Operational Solutions, Inc.; Operational Services LLC; and Kent Goss (the Appellants), alleging breach of a contract and other related causes of action arising out of a contract for repair and refurbishing of a machine owned by Packaging Systems. Appellants failed to appear in the New Jersey lawsuit and a

1

default judgment was entered by the New Jersey court. Packaging Systems thereafter registered their New Jersey judgment in Kansas. Appellants filed a response in the Miami County District Court seeking to quash the foreign judgment for lack of jurisdiction over some or all of them.

After a non-evidentiary hearing, the district court found that the New Jersey court had personal jurisdiction over the Appellants and that the New Jersey judgment was entitled to full faith and credit in Kansas. The Appellants appealed from this ruling.

We affirm the findings and judgment of the district court.

*Factual and Procedural Background*

The parties filed statements of facts, supported by affidavits, along with various motions and responsive pleadings, and the district court set forth detailed findings of fact and conclusions of law from which the background of the litigation is ascertained.

In May 2013, Operational Solutions, Inc. (Operational Solutions), through its President, Kent Goss, sent a quote to Lee Morrow of Packaging Systems regarding refurbishing and upgrading an SBO 1 (Machine). Goss was a resident of Kansas. Operational Solutions was a Kansas Corporation doing business in Kansas City, Missouri, at the time this case was initiated. In the time since, Operational Solutions' corporation status was forfeited for failing to make a required annual report to the Kansas Secretary of State. Goss is also a member of Operational Services, LLC (Operational Services), a limited liability company doing business at the same address as Operational Solutions. Packaging Systems is a corporation registered and operated in New Jersey.

Packaging Systems claimed its first contact with Operational Solutions occurred in December 2012 when Michael Salerno of PET-Inc. (PET) contacted Morrow.

2

Apparently, PET "utilized Operational Solutions as its installing and training entity." This information comes from Morrow's affidavit, which states:

"Packaging Systems' first contact with [Operational Solutions] occurred in December 2012, when Michael Salerno of PET-Inc. contacted me prior to me contacting Operational Solutions, Inc. regarding the refurbishment of an SBO-2/3. PET-Inc. utilized Operational Solutions, Inc. as its installer and training entity. I have attached a screen capture of the PET-Inc. used equipment page webpage that states, 'NOTE:  PET INC Provides installation and training of Blow Molders by Engineering group Operational Solutions[,] Inc.'"

A copy of the webpage is included in the record but is extremely difficult to read. The portion addressed with a note appears to read "Engineering group OSI" without designating what OSI means.

In early January 2013, Morrow received an email from Salerno, again referring to Operational Solutions. Salerno's email forwarded an email from Hope Air Systems, LLC, which contained a quote regarding specifications available for SBO-2/3H-3L machines that was sent to Goss for Operational Solutions. According to Operational Solutions, it never had a contractual relationship with PET. Operational Solutions also stated PET never utilized Operational Solutions as a training entity; instead PET would "refer its customers to Operational Solutions."

According to Morrow, he and Goss discussed installation and training in connection with the refurbished Machine. At that time, Goss stated he would provide a cost to Packaging Systems as the time to ship the Machine, 12-14 weeks later, drew closer. Goss disputes this, stating he "does not recall there being any communications during any initial phone calls between Operational Solutions and Morrow regarding the costs of any training, installation or travel regarding the Machine." According to the Appellants, neither Goss nor Operational Solutions provided a quote to Morrow for any

3

training costs on the Machine prior to October 1, 2013. An email sent on October 1, 2013, from Goss to Morrow specifically states:

> "I have included an estimate you requested for startup assistance, we decided that with the delay in timing on our part I will offer you a 50% labor discount up to the first 7 days of startup/training at your facility in Blackwood [New Jersey] and as always travel related expenses are estimates and billed at actual cost."

A quote with the same October date indicates Operational Solutions was contemplating traveling to New Jersey, staying for nine days, and providing man hours to Packaging Systems.

In May 2013, Operational Solutions provided Packaging Systems a quote to refurbish and upgrade the Machine to a "like new condition." In addition, Operational Solutions was to "upgrade the heating capability from 8 to 10 zones, add base over stroke, Heat Set capability, and preferential capability and a new HMI touch screen." The quote specifies that "[a]ll work is FOB Kansas City." Further, the quote does not contain any information regarding installation, training, or travel to New Jersey. Packing Solutions characterizes the project to "result in a completely custom Machine with custom Machine parts as well as software" and "only people who would have any operating knowledge of the system would be Operational Solutions personnel who refurbished it." Appellants disagree, stating the Machine would be refurbished to "like new" condition and include "other industry standard items." Therefore, anyone with industry knowledge could install, operate, and provide training on the Machine. Operational Solutions' quote was accepted by Packaging Systems.

Packaging Systems was located within the "Urban Economic Development Zone" (UEZ) of Vineland and Millville, New Jersey. "The UEZ Program offers incentives to participating businesses that encourage business growth and stimulate the local

economy." The money that Packaging Systems used to pay Operational Solutions for the work on the Machine was provided primarily by the UEZ Program. Packaging Systems alleged that Goss was aware as early as February 2013 that the funding was based on a loan from the UEZ Program. The Appellants disagree in part, stating Goss only became aware after the quote was accepted and the Machine was delivered to Operational Solutions. Any money Operational Solutions received regarding the Machine came directly from Packaging Systems. Packaging Systems had the Machine shipped to Operational Solutions in Kansas City, Missouri, from India.

A large number of emails were exchanged between Goss, on behalf of Operational Solutions, and Packaging Systems between February 2013 and the initiation of the present case. The emails indicate the terms of the contract were modified a number of times, with Operational Solutions seeking advanced payment in return for cheaper replacement parts and changes to the work done. The emails also indicate the relationship between Operational Solutions and Packaging Systems was clearly deteriorating because Operational Solutions was unable to meet the promised deadline to refurbish the Machine.

Additionally, Packaging Systems alleges that Operational Solutions, primarily through Goss, called Packaging Systems' offices in New Jersey at least 10 times. Appellants disagree, stating that Operational Solutions did not initiate a majority of those calls and that any calls made were in response to messages requesting a call back.

Packaging Systems never received the Machine from Operational Solutions, prompting Packaging Systems to file a complaint in the Superior Court of New Jersey, alleging: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Promissory Estoppel; (4) Unjust Enrichment/Quantum Meruit; (5) Fraud; (6) Negligent Misrepresentation; (7) Conversion by Bailee; (8) Breach of Fiduciary Duty; (9) two counts of Violation of the Consumer Fraud Act; (10) and Violation of New Jersey's

5

Civil RICO Act. Packaging Systems also alleged that the actions of the Appellants "are indistinguishable from the actions of each other, with each acting as the alter ego of the other, such that the conduct of one should be considered the conduct of all." Operational Solutions appears to have begun the process to retain counsel to address the New Jersey lawsuit. However, the Appellants failed to appear and default judgment was entered against them. Packaging Systems registered the New Jersey judgment in Kansas under the Uniform Enforcement of Foreign Judgments Act. In response, the Appellants filed "suggestions in support of defendant's . . . motion to quash foreign judgment," arguing New Jersey lacked personal jurisdiction over the Appellants. A series of responses, affidavits, and other documentation followed from both sides. The Appellants also argued that even if the district court found personal jurisdiction existed for one defendant that did not necessarily mean it existed for all defendants.

Prior to a hearing, the Appellants emailed the district court asking whether there would be an evidentiary hearing on the motions; the district court responded by inquiring whether the parties wanted an evidentiary hearing. The Appellants responded, stating they were "willing to rely upon the affidavits submitted in our various pleadings."

A hearing was held on the issue, but no additional evidence or witnesses were presented. At the hearing, the Appellants' counsel briefly discussed Goss' litigation history in the following conversation:

> "THE COURT: Well, this court is not unfamiliar with Mr. Goss. He's sort of a frequent-flyer litigant in my court since I do all of the Chapter 60 assignments in Miami County. He gets around. So, I know that Mr. Goss knows how to get around in and out of courts and has multiple experiences in civil law. So the specter of him gaming this system is over there in the corner of the room.
> "MR. GOSSERAND: Your Honor, I would just argue that the Court shouldn't take Mr. Goss' past litigation history into account. This is a matter of constitutional rights

6

that are enjoyed by my three defendant [*sic*]—my three clients in this case, Operational Solutions, Operational Services and Mr. Goss.

"THE COURT: Well, and I know. But when you try to cast your client out as, oh, he was just a naive guy, he didn't know how they contacted him, he didn't know what was going [on], he didn't have any idea this had anything to do with New Jersey, it was just some machine in India, you know—you know, I'm not buying the naivete.

"MR. GOSSERAND: Your Honor, if I—if I indicated in my oral argument that my client was naive or through my pleadings—

"THE COURT: Okay.

"MR. GOSSERAND: —that was not my intent."

Ultimately, the district court denied the Appellants' motion to quash the judgment, finding that New Jersey had personal jurisdiction over the Appellants. In making its ruling, the district court stated it was "going to adopt the statement of facts that are contained in [Packaging Systems'] memorandum."

The district court entered a 13-page journal entry on June 14, 2017, setting forth its findings of fact and conclusions of law. The Appellants timely appealed from this judgment.

*The district court did not err in determining New Jersey had personal jurisdiction of the Appellants.*

Whether the judgment of another state is entitled to full faith and credit is a question of law subject to unlimited review. *Master Finance Co. of Texas v. Pollard*, 47 Kan. App. 2d 820, 826, 283 P.3d 817 (2012).

An appellate court exercises unlimited review on the facts when they are based upon written or documentary evidence such as: "pleadings, admissions, depositions, and stipulations." *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997).

7

When the court of another state enters a proper judgment, that foreign judgment is entitled to the same force and effect in Kansas as it would be given in the other state. U.S. Const. art. IV, § 1; *Hamilton v. Netherton*, 194 Kan. 683, 685, 401 P.2d 657 (1965). However, the judgment of another state is not entitled to full faith and credit when the other state did not have jurisdiction to render a judgment. *Durfee v. Duke*, 375 U.S. 106, 110-11, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963); see *In re Estate of Reynolds*, 266 Kan. 449, 454-55, 970 P.2d 537 (1998). The same rule applies to actions brought under the Uniform Enforcement of Foreign Judgments Act. See *National Equip. Rental, Ltd. v. Taylor*, 225 Kan. 58, 60, 587 P.2d 870 (1978).

The burden to prove the foreign court did not have jurisdiction rests solely on the parties challenging the foreign judgment. See *Brockman Equipment Leasing, Inc. v. Zollar*, 3 Kan. App. 2d 477, 482, 596 P.2d 827 (1979). As the Kansas Supreme Court stated:

> "'Collateral attacks upon judicial proceedings are never favored, and where such attacks are made, unless it is *clearly and conclusively* made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void but will be held to be valid.'" (Emphasis added.) 3 Kan. App. 2d at 482 (quoting *Jones v. Jones*, 215 Kan. 102, Syl. ¶ 4, 523 P.2d 743, *cert. denied* 419 U.S. 1032 [1974]).

When determining whether the foreign court's judgment was proper, the "nature, validity, and finality are to be tested by the law of the jurisdiction where the judgment was rendered." *Johnson Brothers Wholesale Liquor Co. v. Clemmons*, 233 Kan. 405, 409, 661 P.2d 1242 (1983). Therefore, this court must determine whether New Jersey had personal jurisdiction over the Appellants based on New Jersey law.

New Jersey courts "exercise personal jurisdiction over a non-resident defendant 'consistent with due process of law.'" *Baanyan Software Services, Inc. v. Kuncha*, 433

N.J. Super. 466, 473, 81 A.3d 672 (2013) (quoting New Jersey Supreme Court Rule 4:4-4[e]). While the New Jersey rule has been amended, the substance remains the same. See New Jersey Supreme Court Rule 4:4-4. Essentially, "New Jersey's long arm jurisdiction extends 'to the uttermost limits permitted by the United States Constitution.'" *Baanyan*, 433 N.J. Super. at 473 (quoting *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 [1971]).

The constitutional standard to determine whether personal jurisdiction exists starts with the test set out by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The Court held:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 [1940]).

There is no question the Appellants were not present in New Jersey. Therefore, they must have had minimum contacts with New Jersey in order for New Jersey to have personal jurisdiction over the suit. See 326 U.S. at 316.

Personal jurisdiction can be either general or specific. General jurisdiction can be asserted when a parties' contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). Packaging Systems does not assert the Appellants had contacts with New Jersey sufficient to establish general jurisdiction.

On the other hand, specific jurisdiction exists when a three-part test is met. First, the defendant must "purposefully avail[] itself of the privilege of conducting activities

9

within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Third, the court may consider additional factors to ensure that asserting jurisdiction "comport[s] with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *International Shoe*, 326 U.S. at 320). Those factors may include:

> "'[T]he burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' [Citation omitted.]" *Burger King*, 471 U.S. at 477.

The overarching consideration in applying the *Burger King* test is the common-sense observation that in order for specific jurisdiction to attach, an individual's "conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Determining whether personal jurisdiction exists is a fact-intensive exercise. As the United States Supreme Court explained:  "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978). Further, the determination is rarely written "'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko*, 436 U.S. at 92 (quoting *Estin v. Estin*, 334 U.S. 541, 545, 68 S. Ct. 1213, 92 L. Ed. 1561 [1948]). Additionally, the

unilateral activity of another party is not enough to create personal jurisdiction in the forum state. *Helicopteros*, 466 U.S. at 417.

However, it is important to note that there is no requirement the individual be physically present in the forum state in order for personal jurisdiction to apply. As the United States Supreme Court stated:

> "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. [Citations omitted.]" *Burger King*, 471 U.S. at 476.

The Court also stated personal jurisdiction is proper

> "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. [Citations omitted.]" *Burger King*, 471 U.S. at 475-76.

It is against this established background that we consider whether the Appellants have met their burden to show New Jersey did not have personal jurisdiction over the case.

11

In this particular case, the Appellants did not meet their burden to show New Jersey lacked personal jurisdiction over the suit. First, there was evidence to support a finding the Appellants purposefully directed their activities toward New Jersey. PET contacted Packaging Systems in late 2012 and early 2013 regarding a business opportunity. There were numerous emails exchanged between the parties over a period of several months. The terms of the deal were altered several times. Some of the emails reference phone calls between the parties. The Appellants were also clearly aware Packaging Systems was located in New Jersey. Throughout the course of their dealings, quotes were sent to Packaging Systems with an address in New Jersey. Morrow's email address signature also contained a New Jersey address in some of his emails. In at least one of Goss' emails, he discussed the timing and costs of traveling to New Jersey for training and installation of the Machine.

Although neither Goss nor any other agent of the Appellants apparently ever physically entered New Jersey, the continuing obligations they created with Packaging Systems clearly availed the Appellants of the privilege of conducting business in New Jersey; with that privilege comes the burden of litigation. See *Burger King,* 471 U.S. at 476-77. The Appellants argue the contacts were the result of unilateral actions by Packaging Systems, but it is clear that there was give-and-take in the business relationship. The Appellants were not passively receiving information from Packaging Systems but instead were actively engaged in contractual negotiations from the beginning to the very end of the relationship. Significantly, the agreement here did not contain any provision designating which state's law would control and there was no involvement of any state other than Kansas and New Jersey.

The Appellants pursued a business relationship with Packaging Systems, had numerous contacts with New Jersey, and communicated extensively with contacts in the foreign state. New Jersey clearly had a substantial interest in adjudicating the case because the case involved money meant to be used to better its own state.

12

Asserting personal jurisdiction in New Jersey would serve the interest of "'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476. New Jersey had an interest in adjudicating the dispute because the contract involved government funds at some level and involved a subsidized New Jersey business which was impacted by the Appellants' actions. Goss was forewarned New Jersey was, at some level, asserting its interest in the business relationship as evidenced by Morrow's email, which advised: "We need to have this resolved immediately. You have had our money and the unit for far too long. The State and local officials are talking about filing a law suit against your organization."

All things considered, the Appellants should have reasonably foreseen the possibility, if not probability, of being hailed into New Jersey court in the event of a breach of their agreement with Packaging Systems, especially given their continuing obligations and frequent modifications to the agreement. See *World-Wide Volkswagen,* 444 U.S. at 297. The Appellants do not include any information suggesting how much of a burden, if any, it would have been to litigate the dispute in New Jersey. The record indicates they did at least contemplate addressing the suit in New Jersey given the fact they began retaining New Jersey counsel.

The Appellants faced a heavy burden to prove New Jersey did not have jurisdiction and the judgment was not entitled to full faith and credit. *Brockman Equipment Leasing*, 3 Kan. App. 2d at 482. Given the established caselaw and based on our own standard of unlimited review, we find the Appellants failed to meet the burden to show that New Jersey did not have the requisite personal jurisdiction. Accordingly, the judgment is entitled to full faith and credit in the courts of Kansas.

*The district court did not err in finding the acts of one appellant were indistinguishable from the acts of the others.*

The Appellants also argue as a corollary to their jurisdictional argument that the district court improperly concluded the acts of one appellant were indistinguishable from

the acts of the other appellants. However, they do not provide any evidence or caselaw specifically supporting their contention that in this instance, the acts of one of them are not attributable to the others. This would implicate the rule that a point raised incidentally in a brief and not fully argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

In any event, Packaging Systems essentially argues their initial complaint in New Jersey was enough to make a prima facie case for personal jurisdiction over all of the Appellants and cites to *Allen v. V & A Bros., Inc.,* 208 N.J. 114, 132-33, 26 A.3d 430 (2011), noting New Jersey recognizes the alter ego doctrine as a basis for finding liability against others who act through a defendant. The Appellants offer nothing to contradict Packaging Systems' contention the Appellants are essentially one and the same.

*The district court properly adopted Packaging Systems' proposed statement of facts.*

The Appellants argue the district court erred by adopting Packaging Systems' statement of facts in reaching its decision.

The Appellants introduce this argument by briefly mentioning the district court erred in referring to Goss' past litigation history during the hearing. However, the Appellants do not pursue this argument, and the district court made it clear that it was aware it could not consider Goss' prior litigation history. Significantly, the Appellants never requested the district court judge disqualify, and, in fact, specifically agreed the district court judge would hear the case.

The remainder of the Appellants' procedural argument raises the doctrine of invited error. Whether the doctrine of invited error applies presents a question of law over which we exercise unlimited review. *State v. Hankins,* 304 Kan. 226, 230, 372 P.3d 1124 (2016). Generally, when a party has invited error, the error cannot be complained of on

appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.,* 297 Kan. 1193, 1203-04, 308 P.3d 1238 (2013).

The Appellants cite to *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 268-69, 275 P.3d 869 (2012), in support of their argument that a district court cannot make credibility determinations based solely on affidavit testimony. However, the procedural posture of *Aeroflex* is significantly different. In *Aeroflex,* the court was considering an original motion under K.S.A. 60-212(b)(2) to dismiss for lack of jurisdiction a lawsuit filed in Kansas. Here, the proceeding involves the enforcement of a foreign judgment already entered. The Appellants had the opportunity to file a motion to dismiss in the original New Jersey action, apparently considered doing so, and decided not to appear in the New Jersey action. This resulted in entry of judgment against them. The Appellants now have the burden of proof since they are seeking relief against Packaging Systems. It would seem appropriate that any factual disputes in the competing affidavits and pleadings would be resolved in favor of Packaging Systems as the party against whom relief is sought. See *Thoroughbred Assocs.*, 297 Kan. 1193, Syl. ¶¶ 1-2.

Here, the district court actually conducted a hearing and received the arguments of counsel based on the evidence as submitted. It weighed the evidence and made appropriate findings of fact to support its conclusions of law. It is clear that if the district court indeed somehow erred in its procedure, any such error was invited by the Appellants. Counsel for the Appellants contacted the district court prior to the hearing and asked whether evidence would be presented at the hearing. The district court left the choice up to counsel. Counsel chose to "rely upon the affidavits submitted in our various pleadings." Simply put, the Appellants cannot come to this court and complain that it was error for the district court to rely on the affidavits when the Appellants asked the court to do just that.

Affirmed.

15